## PACIFIC COAST CASUALTY CO. v. GENERAL BONDING & CASUALTY INS. CO.*

(Circuit Court of Appeals, Ninth Circuit.   March 5, 1917.)

No. 2735.

1. INSURANCE ☞146(3)—POLICIES—CONSTRUCTION.
Ambiguous terms in an insurance policy will be construed most strongly against the insurer which prepared the policy.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295.]

2. INSURANCE ☞146(3)—POLICIES—CONSTRUCTION.
An indemnity policy insuring employers should be construed so as to uphold and not defeat its express object.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295.]

3. INDEMNITY ☞9(1)—CONSTRUCTION—LIABILITY OF INSURER.
Defendant issued an employer's liability policy insuring a corporation against loss and expense arising on account of accidents to any of its employés and providing that, if suit should be brought against the corporation, defendant would at its own expense settle or defend the suit whether groundless or not, that the moneys expended in such defense would not be included in the limits of the liability fixed by the policy, and that the corporation should not assume any liability or interfere with any negotiation for settlement or any legal proceeding nor incur any expense or settle any claim except at its own cost without the written consent of defendant. The policy further provided that no action would lie for any loss or expense unless it was brought for loss or expense actually sustained and paid in satisfaction of a final judgment within 90 days from the date of judgment and after trial of the issue. An employé of the corporation sued for bodily injuries, and, after a defense conducted by defendant, judgment went for the employé, whereupon defendant instructed its counsel to appeal, but informed counsel that it would not furnish a supersedeas bond staying execution. The insured corporation declined to furnish a supersedeas bond, whereupon counsel and the local agent of defendant secured a supersedeas bond from plaintiff, executing in the name of defendant an indemnity contract. The premium for the bond was paid by defendant, and, the judgment being affirmed on appeal, it was satisfied by plaintiff; execution against the insured corporation being returned unsatisfied. *Held,* that it was the duty of defendant to give a supersedeas bond, the insured not being allowed to incur any obligation without its written consent, and hence plaintiff, having satisfied the judgment, was entitled to recover the amount thereof from defendant.
[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 16.]

4. PRINCIPAL AND AGENT ☞166(2)—AUTHORITY OF AGENT.
In such action, defendant was chargeable with the knowledge of the acts of its attorney and agent, and, by availing itself of the supersedeas bond executed by plaintiff, ratified the procuring of the bond.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 629, 633.]

5. INSURANCE ☞202—INDEMNITY INSURANCE—ASSIGNMENT.
Where a loss has occurred which was covered by an employer's liability policy, the insured may, judgment covered by the policy having been rendered, assign the policy in consideration of the assignee satisfying the judgment, and the assignee may recover thereon against the insurer.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 471.]

6. INDEMNITY ☞9(2)—POLICIES—CONSTRUCTION.
An employer's liability policy insured the employer to the extent of $5,000 against loss and expense arising from claims for damages on ac-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied May 14, 1917.

count of injuries suffered by employés and obliged the insurer to defend at its own expense any suit against the employer, declaring that moneys expended in such defense would not be included in the limits of the liability fixed by the policy. An employé recovered a judgment against the employer for $5,000, and the insurer, desiring to secure a stay of execution pending an appeal, procured a supersedeas bond from plaintiff executing an indemnity contract obligating the insurer to indemnify plaintiff against all loss, costs, charges, counsel fees, damages, and expenses whatever. The judgment was affirmed on appeal, and plaintiff satisfied the judgment which included accruing interests and costs. *Held*, that plaintiff is not entitled to recover sums paid on account of the interest accruing from the time of rendition of the judgment to affirmance; the indemnity contract when construed with the policy not including such item.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 17.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by the General Bonding & Casualty Insurance Company, a corporation, against the Pacific Coast Casualty Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed on condition that plaintiff enter a remittitur; otherwise reversed and remanded, with directions to grant new trial.

Myrick & Deering and James Walter Scott, all of San Francisco, Cal., for plaintiff in error.

R. S. Gray, of San Francisco, Cal., and Locke & Locke, of Dallas, Tex., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The General Bonding & Casualty Insurance Company, plaintiff below, here called the "Bonding Company," recovered judgment against the Pacific Coast Casualty Company, here called the "Pacific Company." The Pacific Company sued out writ of error. The case as found by the District Court is this:

The Pacific Company of California issued to Elmo Rock Company a policy of employer's liability insurance by which the Pacific Company insured the Rock Company, a Texas corporation, for the term of a year ending June 18, 1912, on account of an accident to any of its employés "against loss and expense arising from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered during the period of the policy." Under the policy the Pacific Company agreed that, if suit should be brought against the Rock Company on account of an accident, the Pacific Company would at its own expense settle or defend the suit whether groundless or not, and that the moneys expended in such defense would not be included in the limits of the liability fixed by the policy. The policy also contained this clause:

"The assured shall not assume any liability, nor interfere with any negotiation for settlement or any legal proceeding, nor incur any expense nor settle any claim except at its own cost, without the written consent of the company."

The policy further provided that no action would lie for any loss or expense thereunder unless it was brought for loss or expense actually

sustained and paid in satisfaction of a final judgment within 90 days from the date of judgment and after trial of the issue.

In 1911 when the policy was in force, one J. B. Sowders, an employé of the Rock Company, suffered personal injuries in crushing rock for the Rock Company. Sowders sued the Rock Company in the state courts of Texas. The Pacific Company defended and managed and controlled the action in accordance with the provisions of the policy, conducting the defense through John Davis, Esq., of the firm of Meador & Davis, attorneys at law of Dallas, Tex., who were generally employed by the Pacific Company in litigation in the neighborhood of Dallas. In June, 1912, Sowders recovered judgment against the Rock Company for $5,000 with interest and costs. By letter dated June 28, 1912, the Pacific Company advised Meador & Davis to proceed with an appeal in the case, the letter also saying, "But you will understand that we do not furnish a supersedeas bond staying execution." Meador & Davis then requested the Rock Company to furnish a supersedeas bond, but the company refused to do so upon the ground that the Pacific Company should do this. Davis wrote again urging that the Rock Company furnish the bond. A copy of this correspondence was forwarded to the Pacific Company at San Francisco, and on July 30, 1912, it wrote to Meador & Davis, saying:

"We indorse your action taken in this matter and will ask you to proceed with the appeal, but the assured must furnish its own supersedeas bond."

Leeds, managing partner of Miller-Stemmons Company of Galveston, agents of the Pacific Company, then urged the Bonding Company to make a supersedeas appeal bond. That company agreed to give the bond if indemnity bond were obtained from the Pacific Company, and later indemnity bond was procured through Messrs. Meador & Davis, and supersedeas bond was executed on August 6, 1912. The indemnity contract was signed, "Pacific Coast Casualty Company, by John Davis, Its Attorney at Law and in Fact." The contract, after reciting the bringing of suit by Sowders against the Rock Company, the desire to appeal from the judgment, and that a supersedeas bond of $11,000 was required to perfect the appeal, and that the General Bonding Company had agreed to execute the supersedeas bond, provided that the Pacific Coast Casualty Company would indemnify the General Bonding Company against any and all loss, charges, fees, damages, and expenses which might be sustained by reason of having executed the supersedeas bond as surety. The premium for the supersedeas bond was paid to the Bonding Company by the Pacific Company through the agents of the Pacific Company in Galveston, Tex. The lower court found that Stephenson, who was president of and acted for the Bonding Company, did not know of any limitations upon the authority of Davis, but dealt with him believing that his authority was that which was "usual in such cases and was apparently possessed" by Davis; but both Davis, attorney, and Leeds, who was the managing partner of the agents of the Pacific Company, knew of the transaction with Stephenson and of the giving of the indemnity contract already referred to. In due time the judgment in favor of Sowders against the

the Rock Company was affirmed on appeal, and judgment was rendered against the Rock Company and the General Bonding Company as surety, upon which judgment execution was issued, and under it the real and personal property of the Rock Company was levied upon. Thereafter, in a judicial proceeding in the state court a receiver was appointed for the Rock Company, and the sheriff turned over the property levied upon to the receiver under orders of the state court and made a return of his execution as unsatisfied, without having sold the property. Thereupon an alias writ was issued commanding the sheriff to make the amount of the judgment and interest and costs out of the property of the Bonding Company. Thereafter in October, 1913, the Bonding Company paid to the owners of the judgment in Sowders v. Rock Company the money due on the judgment, including interest and ,costs, and in consideration of payment of the judgment the owners thereof assigned the judgment to the Bonding Company and the receiver of the Rock Company under order of the state court assigned to the Bonding Company the employer's liability policy issued by the Pacific Company. Afterwards the Bonding Company demanded from the Pacific Company the payment of $5,560.90 in settlement of its obligations under the policy of employer's liability insurance and the contract of indemnity. Payment was refused, and this action followed.

The District Court held that: (1) When the Pacific Company authorized Davis, its attorney, to take an appeal, it empowered him to do all that was necessary to make the appeal effective, notwithstanding the clause in the letter of the company to Davis saying that the assured must furnish the supersedeas bond; and (2) that under the evidence the Pacific Company by payment of the premium on the bond and the acceptance of the benefit of the bond for the purpose for which it was issued ratified the acts of its own agents and should not be heard to question them.

[1, 2] In testing these rulings we must bear in mind that the policy of insurance was prepared by the Pacific Company, and therefore if its terms are at all ambiguous it will be construed ·strongly against the company making it. The purpose of the contract was to insure the Rock Company against loss and expense arising from claims upon the Rock Company for damages on account of bodily injuries accidently suffered by an employé during the period of the policy; hence the duty of the courts, when called on to interpret the provisions of the contract, is to uphold and not to defeat the expressed object. American Surety Company v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977.

[3] It is provided that, if a claim is made on account of an accident, the assured shall give notice as provided for reporting accidents, and the insuring company at its own expense will settle or contest the claim. Further provision requires the assured if sued on account of an accident to forward to the company, immediately, every process or paper served on it, and that the company at its own expense shall settle or defend the suit whether groundless or not, and that the moneys expended in defense shall not be included in the limits of the liability

fixed under the policy. It is also important to remember the provision that the assured shall not assume any liability nor interfere with any legal proceeding, nor incur any expense nor settle any claim except at its own cost, without the written consent of the company.

The Pacific Company, acting upon its clear right under the terms of the policy, controlled and conducted the defense in the suit of Sowders against the Rock Company for damages. The provisions of the policy contemplated that the Rock Company should refrain from interference with any of the legal proceedings in that action, and the record discloses that the Rock Company undertook no responsibility in connection with the trial or proceedings. Under such a situation, it became the right of the insuring company, if not satisfied with the judgment of the trial court awarding Sowders a recovery, to appeal the case; but in doing so it had the correlative duty of protecting the Rock Company from injury while the appeal was pending. It was not for the Rock Company to stay proceedings by giving the necessary bond, because in giving a supersedeas' bond the Rock Company would have been assuming a liability from which it was expressly relieved by the provisions of the policy. We do not doubt that it might have given such a bond, as it might have done other things relating to the legal proceedings connected with the action in which the judgment was recovered, provided it had obtained the written consent of the insuring company. But, as it is not contended that there was such written consent, we need not dwell upon that point. The provision in the policy that action would not lie against the company for loss or expense under the policy, unless it should be brought for loss or expense actually sustained and paid in satisfaction of a final judgment within 90 days from the date of judgment, was inserted for the benefit of the company, with a view to preventing settlement of a claim by the assured company with the expectation of holding the insuring company liable before a court of last resort had passed upon the validity of the claim. In this way the Pacific Company could be assured that the claim was one provided for by the policy and upon which liability would ensue. But the protection which was afforded to the Pacific Company by such a clause is to be considered with the obligation it assumed, to conduct at its own expense any legal proceedings brought against the assured Rock Company. The way by which the assured could be relieved of any liability in connection with the legal proceedings was for the Pacific, the insuring company, to give the supersedeas bond necessary to prevent the levy of execution pending an appeal which the Pacific Company had the right to take. It would be unjust to hold that the Rock Company could not recover unless the judgment of Sowders against it had been affirmed by the highest court of the state of Texas, yet to say that the Pacific Company was alone authorized to carry on the defense, and if unsuccessful appeal, but decline to give the bond to make the appeal effective as against execution under the judgment. Rochester Mining Company v. Maryland Casualty Company, 143 Mo. App. 555, 128 S. W. 204.

We therefore hold that it was incumbent upon the Pacific Company to give the supersedeas bond, and that it is but just that the Bonding

Company which paid the judgment should have recovery against the Pacific Company.

[4] We believe, too, that the knowledge of Davis and Leeds that the Bonding Company had made the supersedeas bond and that they made it in consideration of the payment of a premium by the Pacific Company, and the execution by the Pacific Company through Davis of the indemnity agreement, was knowledge to be imputed to the Pacific Company, and our opinion is that the Pacific Company, by availing itself of the bond made by the Bonding Company, ratified the action of Davis and Leeds in procuring the bond of supersedeas.

[5] There is some contention that the policy sued on was not assignable, but we find no merit in the point, inasmuch as the policy before us was one of insurance against loss, and after liability became fixed the assured could assign the policy to the Bonding Company in consideration of the Bonding Company paying the judgment against it. Maryland Casualty Co. v. Omaha Electric Light & Power Company, 157 Fed. 514, 85 C. C. A. 106.

[6] The judgment of the state court for $5,000 carried interest with it at the rate of 6 per cent. per annum from the date of rendition, June 19, 1912, and the supersedeas bond dated August 6, 1912, given by the Bonding Company of Texas in order to stay execution, was for the performance of judgment and payment by the Rock Company of "all such damages" as the Court of Civil Appeals in Texas might award against the Rock Company; and the indemnity bond here sued on obligated the Pacific Company to indemnify the Bonding Company against all "loss, costs, charges, counsel fees, damages and expenses whatever" which the Bonding Company should sustain or be put to in consequence of having executed the supersedeas bond.

The rule to be applied is that which strictly follows the limitation of the contract and that, where a liability is limited to $5,000 and there is a covenant that the insuring company will defend and that the moneys expended in defense shall not be included in the limits of the liability fixed under the policy, such sum as has been expended in the necessary conduct of the litigation may be recovered, but that the interest which accrued after the original judgment was rendered in the state court and pending the appeal in the Court of Civil Appeals in Texas was not an expense nor outlay incident to the defending of the suit. The question directly involved was presented in Maryland Casualty Company v. Omaha Electric Light & Power Company, 157 Fed. 514, 85 C. C. A. 106, where the Court of Appeals of the Eighth Circuit cited the conflicting cases and held that a contract to pay the cost of making a defense might fairly contemplate attorney's fees, court costs, stenographer's fees, and other expenditures necessary and directly related to the presentation of the defense, but did not include the collateral and indirect results of doing so. Munro v. Maryland Casualty Co., 48 Misc. Rep. 183, 96 N. Y. Supp. 705; Davison v. Maryland Casualty Co., 197 Mass. 167, 83 N. E. 407; National & Providence Worsted Mills v. Frankfort Marine, etc., Ins. Co., 28 R. I. 126, 66 Atl. 58.

It should follow that the bond of indemnity, when construed with the policy of insurance, does not include liability for the payment of any greater sum than the Pacific Company was liable for when the judgment of the lower court in Texas was affirmed by the Court of Civil Appeals. It results that all sums paid on account of interest from the time judgment was rendered up to the time of the affirmance of the judgment by the Court of Civil Appeals should not have been included in the judgment of the District Court. The court costs proper, which appeared to have been $160.80 paid on October 25, 1913, were properly charged, and in this suit the Pacific Company should be charged with interest on the aggregate amount of $5,160.80 from the date when the Bonding Company paid this sum to the date of the final judgment in the present case, and the Bonding Company is entitled to a recovery of its costs in this action. There should therefore be a remittitur in accordance with the views herein expressed, and the following order becomes appropriate: The judgment of the District Court will be reversed unless within 30 days after the filing of this opinion the Bonding Company files, in the clerk's office of the District Court for the Northern District of California wherein the judgment herein was rendered, the remittitur conforming with the views herein expressed, and within 10 days thereafter files with the clerk of this court evidence of the filing of such remittitur in the District Court. If such remittitur and such evidence be filed, judgment will then be entered affirming the judgment below for $5,160.80 together with costs, to bear interest at the rate of 7 per cent. per annum from October 22, 1913, the date of the payment by the Bonding Company. If such remittitur and evidence should not be filed within the times aforesaid, the judgment will be reversed, with directions to grant a new trial.