[Civ. No. 1991.   Third Appellate District.—September 20, 1919.]

## TULARE COUNTY POWER COMPANY ( a Corporation), Respondent, v. PACIFIC SURETY COMPANY (a Corporation), Appellant.

[1] LIABILITY INSURANCE—ASSUMPTION OF CONTROL OF LITIGATION— WAIVER OF NOTICE OF ACCIDENT.—The conditions of a liability insurance policy that "upon the occurrence of an accident, the assured shall give immediate written notice thereof with the fullest information obtainable at the time," being intended primarily to afford opportunity to the insurer promptly to take charge of a defense, are waived where the insurer does assume control of the litigation growing out of the accident.

[2] ID.—ASSUMPTION OF CONTROL BY INSURER—AFFIRMANCE OF JUDGMENT ON APPEAL—VIOLATION OF POLICY.—It cannot be said that the insured violated a condition of the policy by taking complete control of the motion for a new trial in an action brought against it for damages, where counsel for the insurer was present at and participated in the trial and the judgment in such action was affirmed on appeal.

[3] ID.—PARTIAL CONTROL BY INSURED — WANT OF INTERFERENCE — WAIVER OF BREACH.—In the absence of some complaint that the attorneys for the insured, who had been permitted to take part in the case, interfered with the insurer's conduct of the defense in the action for damages, the fact that the latter did not have full and exclusive control of the defense did not militate against the rule that by assuming such control they waived the prior breach of conditions by the insured.

[4] ID.—ACTION UPON POLICY — PERFORMANCE — WAIVER OF PERFORMANCE—CONSTRUCTION OF FINDINGS.—Where, in an action upon a liability insurance policy, both the fact of performance of all the

1. Construction and effect of condition in employers' liability insurance policy requiring insured to give insurer notice of accident, notes, 11 Ann. Cas. 258; Ann. Cas. 1914A, 271.

Delay in giving notice of claim under employers' indemnity policy, notes, 38 L. R. A. (N. S.) 62; 47 L. R. A. (N. S.) 1213; L. R. A. 1918D, 445; L. R. A. 1918E, 114.

Waiver of provision in accident insurance policy requiring notice of injury or death to be given within certain time, note, Ann. Cas. 1917A, 114.

2. Validity and construction of provision in employers' liability insurance contract giving insurer control of settlement, note, Ann. Cas. 1918C, 405.

conditions of the policy by the insured and the fact of waiver of performance of the conditions of the policy by the insurer, with the facts and circumstances constituting such waiver, are alleged in the complaint, a finding that plaintiff "performed all the conditions of said policy" may be considered as surplusage, if the evidence justifies the further finding of waiver on the part of defendant. The findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment.

[5] ID.—ACCIDENT DURING LIFE OF POLICY.—Where the accident in question happened during the period of the policy it was immaterial that the installation of the wires which caused the accident occurred two months prior to the issuance of the policy, or that the insurer may not have learned of the date of installation of the plant until after the trial of the action growing out of the accident.

[6] ID.—PAYMENT OF JUDGMENT.—The judgment against the insured having become final and a lien upon its property, the payment thereof partly by the insured personally and the balance by the purchaser of its property, who withheld the amount paid from the purchase price, constituted payment within the provision of the policy that "No action shall lie against the company for any recovery under this policy, unless it shall be brought by the assured for loss or expense actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue."

[7] ID.—CONSTRUCTION OF POLICY.—A contract of indemnity is to be strictly construed, and the contract of indemnity measures the rights of the parties thereto, and consequently, the liability of the indemnitor.

[8] ID.—INTEREST ACCRUING PENDING APPEAL—RECOVERY BY INSURER. Interest on the judgment recovered against the insured from the date of its entry and pending an appeal therefrom does not constitute "expense" incurred in defending the action, or "costs," within the meaning of the provision in a liability insurance policy that, in the event of any suit brought against the assured to enforce a claim for damages covered by the policy, the insurer "will defend such suit, whether groundless or not, in the name and on behalf of the insured," and that "the expense incurred by the company in defending such suit, including costs, if any, taxed against the assured, will be borne by the company whether the judgment is for or against the assured."

[9] ID.—INTEREST RECOVERABLE.—An insured who pays a judgment for the full amount limited in a liability policy indemnifying against actual loss, or a judgment for a smaller amount than such limited sum, can recover the sum with interest only from the time of such payment.

[10] ID.—RECOVERY OF ATTORNEYS' FEES.—The insured is not entitled
to recover attorneys' fees paid to its counsel where the insurer
notified the insured that it would defend the action, and did de-
fend it, and the participation therein by the insured's attorneys
was by the insurer's permission and was not required by the terms
of the policy.

[11] ID.—VENUE OF ACTION.—In this action upon a liability insurance
policy, the court having found from the facts set forth in the affi-
davit filed by plaintiff that the contract was made in Tulare
County and was to be performed therein, and the business of
plaintiff having been conducted in that county and the liability
of the defendant under the policy having arisen therein, the
court properly denied the defendant's motion for a change of
venue to the county where it maintained its principal place of
business.

APPEAL from a judgment of the Superior Court of
Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

Denson, Cooley & Denson and Cooley & Lachmund for Ap-
pellant.

Middlecoff & Feemster for Respondent.

Chickering & Gregory, Lilienthal, McKinstry, Raymond,
Haber & Firebaugh and Redman & Alexander, *Amici Curiae*.

HART, J.—The action was brought by plaintiff to recover
upon a liability insurance policy, issued by defendant, dated
June 18, 1913. Judgment was entered in favor of plaintiff
for $5,460, with interest and costs, from which judgment
defendant prosecutes this appeal.

From the allegations of the complaint it appears that plain-
tiff was a California corporation doing business in the county
of Tulare and "between noon on the sixteenth day of June,
1913, and noon on the sixteenth day of June, 1914, was en-
gaged in the business of operating and maintaining an electric
light and power plant" in said county, together with extension
lines and service connections, etc. "That on said eighteenth
day of June, 1913, said defendant made its contractor's public
liability policy of accident insurance," a copy of which was
attached to and made part of the complaint, to portions of
which we shall hereinafter refer. It was further alleged and

found that, "on the eighteenth day of June, 1913, said defendant delivered said policy of insurance to this plaintiff, and plaintiff paid the full amount of the premium provided for in said policy of insurance, to said defendant." It was found that said premium was paid to defendant on or about the third day of January, 1914, "and defendant waived the payment thereof prior to such time and waived any defense it had to said policy by reason of said premium not being paid prior to the time it was so paid."

On the tenth day of July, 1913, one L. C. Bergen was being furnished for hire by plaintiff with electricity for lighting and power on certain property in Tulare county and "in order to use said power said L. C. Bergen maintained on said lots a well for irrigating purposes, and an electric motor and pump and pump-house"; that plaintiff had erected along the south line of said premises a line of poles and a system of wires known as "primary" wires, "charged with a dangerous and life-destroying force and current of electricity, . . . to wit: six thousand six hundred volts"; that the motor was to be operated by 220 volts and the lights by 110 volts; that, to reduce said six thousand six hundred volts to 220 and 110 volts, respectively, transformers and ground wires were "supplied, furnished, installed and erected at said pumping plant" by plaintiff, the system of wires, switches, etc., being known as "secondary" wires. On said 10th of July, 1913, said Bergen descended into the pit in which said pump was located for the purpose of inspecting said pumping plant; at that time "there was a dangerous, unusual, and excessive current of electricity passing from said 'primary' wires and into the drop cord and electric light which hung in the pit of said pumping plant, . . . rendering said drop wire and electric light highly dangerous to handle, and that this dangerous condition was at said time unknown to said Bergen and unknown to this plaintiff." Bergen came in contact with the drop wire and light and was instantly killed, without any fault on his part.

It was alleged in the complaint and found by the court that "upon the occurrence of said accident, and as soon thereafter as plaintiff was informed that a claim was made against plaintiff on account of said accident, plaintiff did, to wit, on the sixteenth day of September, 1913, give immediate

written notice thereof with the fullest information obtainable at the time to the defendant's head office at San Francisco; and at the same time by the said notice gave like notice of the making of said claim on account of said accident."
The notice above referred to was in the form of a letter, signed by Drew & Drew, Attorneys, Fresno, addressed to the defendant at San Francisco, and read as follows: "You are hereby notified that on September 3rd, 1913, Mrs. Sarah E. Bergen, as administratrix of the estate of L. C. Bergen, deceased, has through her attorneys . . . made a claim against the Tulare County Power Company (assured under policies Nos. C. P. 2347 and C. E. 4212), for and on behalf of herself and the minor children of said deceased [naming them] for the death of said L. C. Bergen, claiming that the death of said deceased was caused by coming in contact with a drop cord in the pit of the pumping plant belonging to the deceased. The attorneys have not made claim for any particular amount. We are serving this notice on your company under the provisions of your policy. Mr. Bergen met his death some time in July, but this is the first direct intimation that we have of any claim against the company for his death."
On September 17, 1913, the defendant replied to the above letter as follows: "You are hereby advised that the above policies have been canceled upon the books of this company by reason of the nonpayment of premiums thereunder and that the same have been void and of no effect from date of issue."
On December 8, 1913, Sarah E. Bergen, as administratrix of the estate of L. C. Bergen, deceased, commenced an action against plaintiff, in the superior court of the county of Tulare, in which she asked for fifty thousand dollars damages on account of the death of her husband. Summons was duly issued and a copy of the complaint and summons was served on plaintiff and, on December 11, 1913, plaintiff forwarded to defendant, at San Francisco, said summons and complaint. On December 27, 1913, defendant wrote the following letter to Messrs. Holley & Holley, Visalia: "In Rel: L. C. Bergen vs. Tulare County Power Co. Our Mr. W. B. Renton has made a thorough investigation of the facts surrounding the nonpayment of premium in this case and this office is in receipt of his report thereon, in view of which this company will, upon receipt of the Tulare County

Power Company's check for earned premium in the amount of $572.08 due from 6/16/13 to 9/16/13, be pleased to reinstate this policy without prejudice. We enclose bill for this amount. For this purpose, we will ask you to have assured return to us at once the papers in the case.'' On December 29, 1913, Holley & Holley wrote plaintiff as follows: ''I have received a letter from the Pacific Surety Company this morning offering to reinstate the liability policies in that company which were written and effective June 16th, 1913, and which were canceled for nonpayment, upon the payment of the earned premium from June 16th to September 16th. As I understand it, this contemplates the assumption of all liability under these policies from the date of their issuance, including the case of L. C. Bergen vs. your Company which has been filed for action, on which case the Pacific Surety Company formerly denied liability. . . . You will understand that if you accept the proposition, you will be relieved of all expense in connection with the defense of this case of Bergen's.'' Upon receipt of said last-mentioned letter, plaintiff paid to defendant the amount of premium demanded by it. On March 3, 1914, defendant wrote plaintiff: ''This letter will serve to notify you that policy No. C. P. 2374, issued to you on June 16th, 1913, and subsequently canceled, has been reinstated as of the date of issue, and is in full force and effect.''

It was then found that thereupon plaintiff rendered to defendant all assistance in plaintiff's power in the protection of its interest; that defendant, in the name of plaintiff and on its behalf, filed an answer to the Bergen complaint; that a trial of said action was had and judgment was given therein in favor of the administratrix for the sum of twelve thousand five hundred dollars and $160 costs. Further facts, appearing from the record, will be adverted to in the discussion of the points raised upon the appeal.

[1] 1. It is first contended by appellant that plaintiff failed to perform the first condition of the policy, namely: ''Upon the occurrence of an accident, the assured shall give immediate written notice thereof with the fullest information obtainable at the time,'' and that plaintiff failed to give immediate notice of the claim ''with full particulars,'' as required by the policy.

The court found "that the defendant waived any defense
which it had herein by reason of the failure and neglect of
said plaintiff to give immediate written notice of said ac-
cident."

We think this point is disposed of in favor of plaintiff
by the case of *J. Frank & Co.* v. *New Amsterdam C. Co.*,
175 Cal. 293, where it is said, on page 298, [165 Pac. 927,
930] : "Of course the conditions of the policy requiring notice
to the home office of probable liability are intended primarily
to afford opportunity to the insurer promptly to take charge
of a defense. Such requirements are reasonable and just,
but they are waived when, as in this case, the insurer actually
does assume control of the litigation growing out of the ac-
cident."

[2]    2. It is claimed "that plaintiff violated condition 2 of
the policy, in that it took complete control of one of the legal
proceedings in the Bergen litigation, namely, the motion for
new trial, and did not even notify us of the date of the
hearing of the motion."

The following facts were stipulated to by the respective
parties at the trial: "That at the time of hearing of the
motion for new trial in the Bergen case, Denson, Cooley &
Denson, E. I. Feemster, and A. E. Cooley were acting as
attorneys on behalf of the defendant in said action, and that
no notice of the time of said hearing was given by said E. I.
Feemster, to Denson, Cooley & Denson or to A. E. Cooley,
and that neither Denson, Cooley & Denson nor A. E. Cooley
took part in the argument of said motion for new trial, but
said motion for new trial was argued for the defendant in
said action solely by said E. I. Feemster; that the reason
that E. I. Feemster did not notify Denson, Cooley & Den-
son or A. E. Cooley of the time set for the hearing of said
motion for new trial, was that he believed it would be a
useless tax upon the time of said A. E. Cooley to go to'
Visalia from San Francisco for that purpose, and that said
E. I. Feemster believed that the trial court would refuse
the motion for new trial and pass the matter up to the
appellate court for decision."

As seen, the action of *Bergen* v. *Tulare County Power Com-
pany* was commenced on December 8, 1913, and the summons
and complaint were sent to the Surety Company on Decem-
ber 11th. Between that date and the 27th of December,

defendant was denying any liability on account of the death of Bergen. Before the date when the defendant announced that it would defend the action, the Power Company had appeared therein and filed a demurrer to the complaint. On January 17, 1914, Denson, Cooley & Denson of San Francisco, by A. E. Cooley, wrote to Feemster & Walker, at Visalia, the attorneys for the Power Company, suggesting that an amended demurrer to the complaint be filed, and stating: "We shall be glad to co-operate in every manner in the defense of this action." An amended demurrer was filed and overruled and an answer was filed on behalf of the defendant by "Feemster & Walker, Denson, Cooley & Denson, attorneys for defendant." Mr. Cooley was present and participated in the trial, and the decision of the supreme court (173 Cal. 709, [161 Pac. 269]) shows him to have been one of the attorneys for the appellant on the appeal.

In *Williams* v. *Harter,* 121 Cal. 47, 52, [53 Pac. 405], the appellant made the point that the trial court arbitrarily denied his motion for a new trial without hearing or considering the grounds urged in support thereof. The supreme court refused to consider the point because not properly brought before it, but said: "Besides, the real and only question is, Did the court err in denying the motion?"

The supreme court having affirmed the judgment in the Bergen case, we think, under the authority of the above-cited case, that it becomes immaterial whether Denson, Cooley & Denson were notified of the date set for the hearing of the motion for new trial.

3. It is next urged that "no waiver of breach of conditions was proved, and none could have been under a complaint alleging due performance by plaintiff of all conditions of the policy."

In this connection, the allegations of the complaint, which the court found to be true, were: "And this plaintiff has duly performed all the conditions of said policy of insurance upon its part to be performed. That defendant herein through its own attorneys and counselors at law controlled all said legal proceedings, and had charge of the trial of said action, and tried the same. And this plaintiff alleges that by reason of the facts herein alleged the defendant waived and excused any further notice of said accident, and waived any and all defenses it might have had herein."

In *J. Frank & Co.* v. *New Amsterdam C. Co., supra,* it is stated in a syllabus: "When an insurance company, with full knowledge of all the facts, enters into negotiations and relations with the assured, recognizing the continued validity of the policy, the right to a forfeiture for any previous default which may be asserted is waived."

In *Rodgers* v. *Pacific Coast Casualty Co.,* 33 Cal. App. 70, [164 Pac. 1115], it was also held that "where an insurance company . . . takes charge of and assumes exclusive control of an action brought against the insured for damages for injuries from . . . an accident, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment not exceeding the amount stipulated in the policy."

[3] Appellant attempts to distinguish those cases from the one at bar because here the insurance company did not have, while in the cited cases it did have, "full and exclusive control" of the litigation. In the Frank case the attorney for the insurance company invited the attorney for the insured to participate in the preparation and trial of the case, but he refused to do so. In the present case, Mr. Cooley, in the letter to plaintiff's attorneys suggesting that an amended demurrer to the complaint be filed, wrote: "Inasmuch as the plaintiff has sued for very much more than the policy limit of the Pacific Surety Company, we presume the defendant will want to employ its own attorneys to represent it in the trial of the action. This is customary, and permission is always granted by the Pacific Surety Company to the assured to do so." The attorneys for the Power Company consented to act and thereafter did act in conjunction with the attorneys for the Surety Company in the conduct of the case. Aside from the matter of the argument of the motion for new trial, appellant makes no claim that plaintiff's attorneys interfered with their conduct of the defense in the Bergen case. While appellant's attorneys may not have had "full and exclusive control" thereof, the absence of any complaint that the defense was interfered with by plaintiff's attorneys would seem to indicate that the point now made is without merit.

Appellant cites *Todd* v. *Union Cas. & Surety Co.,* 70 App. Div. 52, [74 N. Y. Supp. 1062], wherein it is stated: "If he [the plaintiff] has performed, then that fact must be alleged

without qualification. If he has not performed, for the reason that defendant waives performance, then the conditions waived and the facts and circumstances constituting such waiver must be alleged." *Peek* v. *Stienberg,* 163 Cal. 127, 133, [124 Pac. 834], is also cited to the same effect. **[4]** As seen, in the present case, both the fact of performance and the fact of waiver, "with the facts and circumstances constituting such waiver," were alleged.

"The findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment." (*Haller* v. *Yolo Water & Power Co.,* 34 Cal. App. 317, [167 Pac. 197].) The finding that plaintiff "performed all the conditions of said policy" may be considered as surplusage, as the evidence fully justifies the further finding of waiver on the part of defendant, and this disposes of the further contention of appellant that said findings are inconsistent.

4. Appellant complains that the finding that "Feemster & Walker, Denson, Cooley & Denson, and Chas. E. Bush, Esq., were all acting as the legal representatives of both said Tulare County Power Company and Pacific Surety Company and were co-operating in the defense of said action under the terms of said insurance policy," is inconsistent with the further finding that E. L. Feemster, in making the motion for new trial, "was representing the Pacific Surety Company, and not the Tulare County Power Company."

We cannot see that these findings are inconsistent, but if it be conceded that they are, we do not perceive how any harm could have resulted to the defendant therefrom.

5. The point is made that there is no evidence supporting certain of the findings essential to the support of the judgment. The findings referred to we have already considered in connection with the consideration of other points urged as grounds upon which a reversal of the judgment should be ordered. We will not enter herein upon an analytical examination of the evidence for the purpose of showing, as easily it may thus be shown, that there is no merit in this point. It is enough to say that there is but one of the findings of which it is asserted that there is no evidence to support them which might justly be held to be amenable to that criticism, and that finding is the one to the effect that plaintiff had performed all the conditions of said insurance policy

imposed upon it; but as to that finding it is, as above suggested, immaterial whether it does or does not derive support from the evidence, since the court also found, upon ample evidence, that the defendant had waived any breach of any of the conditions of the insurance policy of which the plaintiff might have been guilty and also waived any defense which might have been based upon any such breach.

[5]    6. It is next argued that "the policy did not cover this accident because no premium was received based upon the compensation paid the employees of plaintiff who negligently installed the Bergen plant."

The argument is that the installation of the wires on the Bergen plant "was made three months prior to the accident and the premium was based upon the pay-roll from June 16, 1913; . . . that none of the compensation paid prior to the issuance of the policy entered into the computation of the premium. No consideration passed from plaintiff to defendant to cover insurance for negligence occurring prior to the issuance of the policy."

The policy agreed to indemnify the assured "against loss or expense arising or resulting from claims upon the assured for damages on account of bodily injuries, including death therefrom, accidentally suffered, or alleged to have been suffered, during the period of this policy, by any person or persons not employed by the assured by reason of the operation of the business described in the schedule . . . when such injuries or death result from accident occurring within the period hereinafter mentioned."

The accident in question happened "during the period of this policy," and we think it entirely immaterial that the installation of the wires which caused the accident occurred two months prior to the issuance of the policy. Nor is it material that defendant, as is the claim, may not have learned of the date of the installation of the plant until after the trial of the Bergen case. The fact, if known to the defendant before the trial, could not have excused the Power Company from liability for the accident and could have availed defendant nothing, because its liability was for accidents occurring during the life of the policy.

[6]    7. Section 3 of the policy reads as follows: "No action shall lie against the company for any recovery under this policy, unless it shall be brought by the assured for loss

or expense actually sustained and paid in money by the assured in satisfaction of a judgment after actual trial of the issue, nor unless such action be brought within one year after such payment.''

There was introduced in evidence an agreement, of date June 30, 1915, between Tulare County Power Company and Mt. Whitney Power & Electric Company, supplemented by an agreement of August 2, 1915, whereby said Mt. Whitney Company purchased the properties of the Tulare County Power Company, and wherein it was recited that the judgment in the Bergen case was a lien upon said properties and that the balance due the Tulare Company under said agreement of sale should not be paid by the Mt. Whitney Company until said judgment and lien had been fully satisfied of record.

It appeared that the Mt. Whitney Company paid fourteen thousand dollars of the Bergen judgment and the Tulare Company paid $1,036.10 thereof. It is claimed by appellant that this payment by the latter company does not constitute the payment provided in said section 3 of the policy.

Appellant cites *Philadelphia Pickling Co.* v. *Maryland Casualty Co.,* 89 N. J. L. 330, [98 Atl. 433]. There a policy of insurance was issued by the defendant to ''Philadelphia Pickling Co.,'' which was in reality Sallie Wittenberg, she having adopted that trade name. One Chambers, an employee, was injured in the assured's factory and brought suit and recovered judgment. After the verdict and before final judgment, Sallie Wittenberg transferred her business to the plaintiff, Philadelphia Pickling Co., a corporation, which took over the assets and assumed the liabilities of the trade name, including the Chambers claim. The policy was attempted to be passed by a parol transfer and delivery, but at the time of the incorporation of the plaintiff the policy had expired. The corporation paid the Chambers judgment and brought the action against the surety company to recover the money paid. Said the court: ''Clearly, the appellant cannot recover as the assured under the policy. The difficulty, however, is this: Sallie Wittenberg never suffered any loss. She never paid any money. The money that was paid was paid by the present appellant, the Philadelphia Pickling Company, Incorporated. . . . There was no loss under the

policy. While it is true Sallie Wittenberg had assigned her cause of action, she could not assign any loss, for she had already had that loss made good to her by the Philadelphia Pickling Company, not by way of indemnity, but as a part of the purchase price of the property."

The facts in the case at bar differ from those in the above case in the following particulars: The assured here did suffer loss; there was loss under the policy; the assured did not assign its cause of action, but itself prosecuted the suit. The check of the Mt. Whitney Company for fourteen thousand dollars was drawn to the order of plaintiff and bore the endorsement that it was in full satisfaction of the Bergen lien. This check, together with one of the plaintiff for $1,036.10, was delivered to the county clerk and by him to Mrs. Bergen. It is said, in *J. Frank & Co.* v. *New Amsterdam C. Co., supra:* "It is therefore immaterial to the insurance carrier how or when that corporation [plaintiff] obtained the money or the credit which enabled it to pay Cousins [judgment creditor] the amount due." And it was said, in *Rodgers* v. *Pacific Coast Casualty Co., supra,* that when the judgment against the assured became final, the liability of the insurer became fixed, and it would have been competent for the assured to assign her claim against the insurer to the judgment creditor in satisfaction of the judgment.

We can see no merit in the point under discussion.

8. Appellant contends that the court erred in allowing interest from the date of the entry of the Bergen judgment and in allowing plaintiff's attorneys' fees.

This contention must be sustained. [7] A contract of indemnity is to be strictly construed, and the contract of indemnity measures the rights of the parties thereto, and consequently, the liability of the indemnitor. The defendant here agreed to indemnify the plaintiff "against loss or expense arising or resulting from claims upon the assured for damages," etc., to the extent of five thousand dollars in the case of bodily injuries or death to one person, etc. In addition, the indemnitor agreed that, in the event of any suit brought against the assured to enforce a claim for damages covered by the policy, it "will defend such suit, whether groundless or not, in the name and on behalf of the insured," and that "the expenses incurred by the company in defending such suit, including costs, if any, taxed against the assured,

will be borne by the company whether the judgment is for or against the assured.''

[8] It is claimed by the respondent that interest upon the judgment is a part of the costs or expenses of the litigation. But this cannot be so. The ''costs'' referred to in the contract of indemnity refer to the costs of defending the suit for the recovery of damages against the assured, and certainly it cannot reasonably be said that interest on the judgment recovered against the assured is any part of the cost necessarily incurred or to be incurred in defending the action in which said judgment was obtained. As stated, the assured is bound by the limitation as to reimbursement prescribed by the contract of indemnity, and obviously the allowance of interest on the judgment from the date of its entry and pending the appeal therefrom would result in extending the liability of the indemnitor beyond the amount to which the contract of indemnity expressly limits such liability. This conclusion as to interest is supported by the cases generally.

In *Maryland Casualty Co.* v. *Omaha Electric L. & P. Co.,* 157 Fed. 514, 519, [85 C. C. A. 106], the United States circuit court of appeals of the eighth district, considering the precise point under discussion in an action on bond such as the one involved herein, said: ''Is the interest accrued after the original judgment was rendered, and pending the appeal to the supreme court, an expense or outlay incident to defending the suit, and when paid by the assured does it constitute a loss within the meaning of the policy? In answering this question we must not forget that the matter resides in the domain of contract, and that the contract measures the rights of the parties. They agreed that defendant's limit of liability should be five thousand dollars, except as it might be increased by failure on its part to pay the costs of making the defense. The interest, in our opinion, is not a part of such cost. It may be remotely related to the delay occasioned by making a defense, in that if no appeal had been prosecuted and no *supersedeas* secured, the judgment as an indirect result would probably have been paid and no interest would have accrued. But this is a forced and unnatural view to take. An agreement to pay the cost of making a defense in the common and well-understood acceptance of the term fairly and reasonably contemplates the attorney's fees, court costs, stenographer's fees, and other

expenditures, necessary and directly required to present the defense, and does not include the collateral and indirect results of doing so.'' (See, also, *Pacific Coast Casualty Co.* v. *General Bonding & Casualty Ins. Co.*, 240 Fed. 36, [153 C. C. A. 72, 77]; *Davison* v. *Maryland Casualty Co.*, 197 Mass. 167, [83 N. E. 407]; *Munro* v. *Maryland Casualty Co.*, 48 Misc. Rep. 183, [96 N. Y. Supp. 705]; *National & Providence Worsted Mills* v. *Frankfort Marine & Plate Glass Ins. Co.*, 28 R. I. 126, [66 Atl. 58]; *Stephens* v. *Pennsylvania Casualty Co.*, 135 Mich. 189, [3 Ann. Cas. 478, 97 N. W. 686].)

[9] The sum of the rule as to interest in such cases is this: That an assured who pays a judgment for the full amount limited in a liability policy indemnifying against actual loss, or a judgment for a smaller amount than such limited sum, can recover the sum with interest *only from the time of such payment,* but that interest accruing *on the judgment pending an appeal therefrom* is not an expense of defending the action. The case of *Saratoga Trap Rock Co.* v. *Standard Accident Ins. Co.*, 143 App. Div. 852, [128 N. Y. Supp. 822], sets forth and elaborately examines the reasons for the disallowance of interest upon a judgment pending an appeal therefrom or before the judgment has become final (which occurs only when the judgment has been affirmed by the appellate court) in a case, like the one involved herein, in which a security company has bound itself to indemnify the judgment debtor against loss by reason of such judgment. The case is an instructive one on the proposition, but it is not necessary to do more than refer to it herein.

Counsel for respondent declare that interest ought to be allowed upon the judgment for the reason that the defendant, by exercising its right of appeal in the Bergen case, delayed the payment of the judgment and thus permitted the interest to accumulate thereon. A similar position was taken in *Maryland Casualty Co.* v. *Omaha Electric L. & P. Co.*, 157 Fed. 514, [85 C. C. A. 106], and was disposed of by the court in said case as follows: ''The argument of plaintiff's counsel that the defendant, by exercising its right of appeal, and by superseding the execution of the judgment pending that appeal, caused the accumulation of interest in question, and thereby created an additional charge against the plaintiff for which it should be held responsible as a loss to the plaintiff, is more specious than sound. The fallacy rests

in a failure to recognize the advantage which the appeal gave the plaintiff. By reason of it plaintiff was permitted to retain and use the five thousand dollars, which otherwise would have been paid out by it. The value of the use is equal to the accrued interest, that being only a consideration paid for the use of money or for forbearance in demanding it when due. Accordingly, the assured lost nothing by the delay occasioned by the appeal or by paying the interest which accumulated pending the appeal. The assured stood after paying the interest exactly as it would have stood if it had paid the judgment of five thousand dollars on January 3, 1902, when originally rendered. Nothing was lost by the appeal, as the interest ultimately paid was neutralized by the use and enjoyment of the money before that time."

The judgment in the Bergen case was rendered and entered on the twenty-third day of May, 1914, and was paid by the plaintiff herein on February 1, 1917. It follows that interest on the judgment between those dates is not recoverable by plaintiff.

[10] The attorneys' fee of $250, awarded by the judgment to plaintiff's attorneys, should not be allowed. The fact is that the Surety Company notified plaintiff that it would defend the Bergen action and did defend it, and the participation therein by plaintiff's attorneys was by defendant's permission and was not required by the terms of the policy. Indeed, the evidence clearly enough shows that the part taken in said action by the attorneys for the plaintiff was wholly voluntary and gratuitous on their part. Moreover, in a letter of January 17, 1914, to Feemster & Walker, attorneys of the plaintiff, Mr. Cooley, one of defendant's attorneys, wrote that the expense of plaintiff's attorneys was "to be borne by the assured."

[11] 9. It is lastly contended that the court erred in denying defendants' motion for a change of venue.

The affidavits upon which the motion was made showed that defendant was a resident of and had its principal place of business in San Francisco; that the insurance policy was made and countersigned in San Francisco and was to be performed there; that it was customary amongst insurance companies to make payments to the persons insured at the home office, or principal office, of such companies.

Respondent contends that the action was properly tried in Tulare County, because the contract was made and was to be performed, the liability sued on arose and the breach occurred in said county. (Const., art. XII, sec. 16.)

Section 1626 of the Civil Code reads: "A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent."

In answer to the affidavit made on behalf of defendant on the application to change the place of trial, H. H. Holley deposed as follows: "That at the time of the execution and delivery of the policy No. C. P. 2374, . . . affiant was the agent of defendant Pacific Surety Company, through whom said policy was solicited and delivered; that said policy was received by affiant in Visalia, Tulare County, by mail from the head office of said defendant, and affiant acting as the agent of defendant personally delivered said policy to said plaintiff in Tulare County; and during the time affiant was the agent of said defendant, it was the practice and custom of defendant to pay its losses occurring in Tulare County by sending drafts to affiant, as its local agent, and affiant would thereupon deliver said drafts personally to the beneficiaries of defendant's policies, who suffered losses."

It is true that a different state of facts was set up in the affidavits filed by defendant, but the court did not hold with it. Under the authority of *Ivey* v. *Kern County Land Co.,* 115 Cal. 196, 201, [46 Pac. 926], the court was justified in finding, from the facts set forth in the Holley affidavit, that the contract was made in Tulare County and was to be performed therein. The business of plaintiff was conducted in that county and the liability of the defendant under the policy arose therein.

The judgment should be modified by eliminating therefrom the sum of $250, attorneys' fees, and the sum of $1,017.80, interest on the sum of $5,460 from May 23, 1914, to February 1, 1917, and, as so modified, the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 17, 1919, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the third appellate district is denied.

In so far as the claim of interference by the respondent in the matter of the motion for new trial is concerned, we base our denial of a hearing in this court upon the finding of the trial court substantially to the effect that Mr. Feemster represented appellant, which we believe, under all the circumstances shown by the record, to be sufficiently supported by the evidence.

All the Justices concurred.