CHARLES W. LEWIS *vs.* WASHINGTON COUNTY RAILROAD CO.

Washington. Opinion February 28, 1903.

*Contributory Negligence. New Trial. Conflicting Testimony. Collision at Railroad Crossing. Verdict against Evidence.*

Even when there is strong doubt of the actual occurrence or existence of a fact found by a jury, if the evidence is conflicting, their finding will not be disturbed on that ground.

But when, in an action to recover for the defendant's negligence, from the testimony of the plaintiff himself and the undisputed facts in a case, it is clear that the plaintiff failed to exercise that degree of care which common prudence as well as the law requires and that his negligence and want of care not only contributed to the injury but was its proximate cause, a verdict finding no negligence on the part of the plaintiff will be set aside.

Motion by defendant for new trial. Sustained.

Action on the case for injuries claimed by plaintiff to have been received by him in a collision between one of defendant's locomotives and plaintiff's team at a railroad crossing in Eastport, on the Washington County Railroad, on January 8, 1901.

There was no flag-man at the Washington Street crossing, where the accident is claimed to have occurred, to warn persons using the highway of the approach of trains.

The case appears in the opinion.

*L. H. Newcomb; G. M. Hanson and A. St. Clair; W. R. Pattangall,* for plaintiff.

*G. A. and B. Y. Curran,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

STROUT, J. Plaintiff claims that he was injured by collision of a locomotive of defendant with his team, at the crossing of the railroad over Washington Street in Eastport. He had a verdict, and the case is here on motion to set the verdict aside as against evidence.

A careful examination of the evidence raises a serious doubt whether any collision in fact occurred, but the evidence on that point was conflicting. It was peculiarly within the province of the jury to determine that question, and we are not disposed to disturb the verdict on that ground.

Whether the negligence of the plaintiff contributed to the accident is a more serious question. He says he came up the county road from Perry, and turned into Washington Street; that he there saw a locomotive backing down on the eastern side track of defendant; that when he saw it, he slowed down his horse to a walk, and walked around the corner; that he drove along down Washington Street toward the crossing, and kept watching for a train; he started his horse into a trot of about six miles an hour, and kept on at that rate, without seeing or hearing the locomotive, till his horse was over the first two tracks, when he saw it approaching the street at a distance, he judged, of about ninety feet; he then started up his horse to get across.

It is important here to take into account the location of the tracks, certain distances, and the surrounding circumstances. From the turn into Washington Street to the western side track is two hundred and forty feet; next easterly of this track is the main line; next easterly the station, southerly of Washington Street and distant one hundred and five feet from the centre of the street at the main line crossing; next easterly is another track, on which this locomotive was running. Between the western rail of this latter track and the eastern rail of the main line is thirty-five feet in the centre of the street, and thirty-three feet on the northerly side of the travelled part. Standing in the centre of Washington Street, at the crossing of the main line, a person can see up the extreme eastern side track past the northeast corner of the station, a distance of seventy-five feet. These distances are given by the engineer from actual survey, and are not disputed.

When plaintiff was at the corner of the county road and Washington Street, and saw the locomotive backing up on the siding, he had reason to believe that it would soon return; that he did so regard it is evident, as he says, "he slowed his horse down to a walk and walked around the corner," and he "kept watching for a train," and

after he turned the corner which was two hundred and twenty-five feet from the main line, he started his horse into a trot of about six miles the hour, and kept that pace until he was on the main line. Here he was thirty-five feet from the siding on which the locomotive was, and he then saw it—at a distance probably of seventy-five feet, but which plaintiff estimated to be ninety feet. Instead of stopping, as he certainly could have done, if his horse was under control, and he says it was, or turning in the street, which at that point was eighteen to twenty feet wide in the travelled part, he says "I started my horse—hollered at my horse and started him up to get across." It is in evidence uncontradicted that the horse was a spirited one, had run away at least once before that, and was nervous and restless at a train. It is manifest that either from fear of his horse or a desire to save time, and a probable miscalculation of the distance of the locomotive or its speed, he rashly attempted to cross the track in advance. If he had been looking and listening, as he should have been, it is incredible that he would not have heard the engine before he saw it.

Under these circumstances we cannot doubt that the plaintiff failed to exercise that degree of care which common prudence, as well as the law, requires; and that his negligence and want of care not only contributed to the injury, but was its proximate cause.

This conclusion is reached from the evidence introduced by the plaintiff, and upon the theory that defendant was negligent. But in fairness it ought to be said that the positive evidence introduced by the defendant that the locomotive bell was ringing, and that it was running at a slow rate of speed, is hardly overcome by the opposing negative evidence of witnesses who say that they did not hear the bell, and the judgment of inexperienced persons as to the speed.

*Motion sustained; verdict set aside; new trial granted.*