MARYLAND CASUALTY CO. OF BALTIMORE, MD., v. OMAHA ELECTRIC LIGHT & POWER CO.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1907.)

No. 2,553.

1. INSURANCE—INDEMNITY INSURANCE—ASSIGNMENT OF POLICY.

A provision of an employer's insurance policy, prohibiting its assignment by the assured unless with the consent of the insurer, has no application to an assignment of a cause of action which has already accrued thereon and after the policy has expired by its terms.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 475–477.]

2. SAME—RIGHT OF ACTION BY ASSIGNEE.

A provision of an employer's insurance policy that "no action shall lie against the company as respects any loss under the policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him, and in satisfaction of a judgment after trial of the issue," does not prevent the maintenance of an action on the policy by an assignee of the claim for indemnity, who for value received from the assured has assumed and paid the judgment liability, which within the true meaning of such provision is equivalent to payment by the assured.

3. SAME—EXTENT OF LIABILITY—"AT ITS OWN COST" DEFINED—INTEREST.

A policy, insuring against loss resulting from the injury or death of an employé of the assured through its negligence, limited the liability of the company for loss through the injury or death of one person to $5,000, but further provided that, "if any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company and the company will defend against such proceeding in the name and on behalf of the assured, or settle the same at its own cost, unless it shall elect to pay the assured the indemnity provided for." An action was brought against the assured, resulting in a judgment against it for $5,000, which was affirmed on appeal, and then paid by the assured. Held, that the phrase "at its own cost," as used in such provision of the policy, meant the same as "at its own expense," and was not limited to the taxable court costs of the action, but included whatever expenditure was necessary in defending the suit, such as court costs, attorneys' and stenographers' fees, and the like, which the company was required by such provision to pay, although it might be in addition to the $5,000, limited in case it elected not to defend or settle; that as so construed the company was liable for the amount of the judgment, increased by whatever of such expense was paid by the assured, with interest thereon from the time of such payment, but was not liable for interest on the judgment pending the appeal, during which time the assured had the use of the money.

4. SAME—EXTENT OF LIABILITY—INTEREST ACCRUED PENDING APPEAL.

The extent of the company's liability under such policy is governed by the terms of the contract, and is thereby limited to $5,000; and the expense of defending the action against the assured, if the company elects to defend, and the interest accruing on the judgment recovered in such action pending an appeal therefrom, is not a part of such expense.

**5. INTEREST—NATURE.**

Interest is a consideration paid for the use of money, or for forbearance in demanding it when due; and so long as one retains money and has its use he can make no charge against another for interest thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Interest, § 1.

For other definitions, see Words and Phrases, vol. 4, pp. 3696–3709; vol. 8, p. 7691.]

In Error to the Circuit Court of the United States for the District of Nebraska.

This was a suit instituted by the Omaha Electric Light & Power Company against the casualty company to recover on an employer's indemnity contract issued by defendant to plaintiff's assignor, the New Omaha Thomson-Houston Electric Light Company, hereinafter called the Thomson Company, to indemnify it for the period of one year against loss for damages sustained by its employés and caused by its negligence. While the policy was in force one Dent, an employé, was accidentally injured and died. The administratrix of his estate brought an action in the district court of Nebraska against the Thomson Company, claiming that the injury and death resulted from its negligence. The action resulted January 3, 1902, in a judgment against the Thomson Company for $5,000 and costs. This was taken by petition in error to the Supreme Court of Nebraska, where, on April 22, 1903, the judgment was affirmed. Later a rehearing was granted, and on June 8, 1905, the judgment was again and finally affirmed. After the rendition of the judgment and its first affirmance in the Supreme Court, when the corporate existence of the Thomson Company was about to expire by limitation, the plaintiff in this action, the Omaha Electric Light & Power Company, was incorporated to take over its assets, assume its liabilities, and succeed to its business. As contemplated, it took over by assignment, amongst other assets, the claim against the casualty company on its policy of indemnity, and assumed the liability of that company on the judgment obtained by Dent's administratrix. These things it did without consent of the casualty company. After this reorganization on June 8, 1905, the Supreme Court finally affirmed the Dent judgment, and the casualty company requested the Thomson Company to pay the same, and recognized its obligation to reimburse it. The successor of the Thomson Company, the plaintiff herein, pursuant to that request upon its assignor, and pursuant to its agreement with its assignor to pay all its liabilities, on July 21, 1905, paid the judgment, amounting in principal to $5,000, in interest from January 3, 1902, to July 21, 1905, to $1,326.10, and in costs $115.30, making an aggregate of $6,441.40, and presented a receipt to the defendant and demanded to be reimbursed in that sum. The casualty company denied liability totally (1) because its contract was not with the plaintiff but only with its assignor, the Thomson Company, and because it had never consented to an assignment of the claim against it by the Thomson Company to the plaintiff, and (2) because the Thomson Company had not itself ever paid the judgment debt, and denied liability partially on the ground that in any event the limit of its liability for the death of any one person was $5,000, and that it was not liable for the interest which accrued between the date of the rendition of the original judgment, January 3, 1902, and the date of the payment by the plaintiff, July 21, 1905, or for the costs of the suit of Dent against the Thomson Company.

The rights of the parties upon the issues joined between them depend upon the application of the following provisions of the policy of indemnity: (1) "Any assignment of interest under this policy shall be void unless the written consent of the company is indorsed hereon by one of its officers." (2) "No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him and in satisfaction of a judgment after trial of the issue." (3) "The company's liability for an accident resulting in injuries to or in the death of one person is limited to $5,000 and subject to the same limit for each person. The total liability for any one accident resulting in injuries to or in the death of any number of persons is limited to $10,000." (4) "If any suit is brought against the assured to enforce a claim for damages on ac-

count of an accident covered by this policy immediate notice thereof shall be given to the company and the company will defend against such proceeding in the name and on behalf of the assured or settle the same at its own cost unless it shall elect to pay the assured the indemnity provided for in clause A of the special agreements as limited therein." (Clause A there referred to is the third provision of the policy just quoted.)

On the foregoing facts the court below rendered a judgment for the full amount paid by plaintiff in satisfaction of the Dent judgment, including the interest of $1,326.10 and costs, $115.30, as well as for interest which accrued after plaintiff paid the judgment. The defendant brings the case here by writ of error, and assigns error in the rendition of any judgment against it on the foregoing facts, and also that the court erred in awarding to the plaintiff any sum in excess of $5,000, with interest from the date of payment thereof by the plaintiff.

Matthew A. Hall (Carroll S. Montgomery, on the brief), for plaintiff in error.

W. W. Morsman, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge (after stating the case as above). 1. Do the first and second provisions of the policy above set forth defeat plaintiff's right to recover as assignee or successor of the Thomson Company, the assured named in the policy? The provisions referred to avoid the policy in the event of its assignment without the written consent of the insurer and declare that no action to recover on the policy shall lie against the insurer unless brought by the assured himself to reimburse him for loss actually sustained in the payment of a final judgment on the merits. The assignment in question was made after the assured sustained the loss and after it had been adjudged to be a legal liability against it. Dent had been injured. His administratrix had instituted suit and had prosecuted it to final judgment against the assured before the latter transferred its claim against the insurer for reimbursement, to the plaintiff. At that time the term of the policy had expired, and the character of the assured for integrity and prudence, on the strength of which the insurer might have relied in making its contract, could no longer affect its liability. The recognized reasons for the prohibition of assignments without the consent of the insurer had ceased. Its liability had become fixed, and like any other chose in action was assignable regardless of the conditions of the policy in question. This is settled by the great weight of authority. Beach on the Law of Insurance, vol. 2, § 1114; May on Insurance, § 386; Dogge v. Northwestern National Ins. Co., 49 Wis. 501, 5 N. W. 889; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N. W. 303; Combs v. Shrewsbury Mut. Fire Ins. Co., 32 N. J. Eq. 512; Archer v. Merchants' & Manufacturers' Ins. Co., 43 Mo. 434; Nease v. Ætna Ins. Co., 32 W. Va. 283, 9 S. E. 233; Aultman v. McConnell (C. C.) 34 Fed. 724.

In Wood on Fire Insurance, vol. 2, § 361, the doctrine is stated thus:

"Where the policy prohibits an assignment, an assignment without the insurer's consent invalidates it, but, in the absence of such a condition, the validity of the policy is not affected thereby, but still remains operative as to the assured; nor does an assignment after a loss has transpired invalidate it.

In such case the insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt. After a loss the delectus personæ no longer becomes material, and even though the policy prohibits such an assignment, and provides that if so assigned the policy shall be void, it is held that such prohibition is void, as the insurer cannot restrict the assignment of a debt. The reasons that induce the restrictive clause have no existence or application after the risk has ceased."

The cases relied upon by defendant's counsel have been carefully examined. They declare that conditions in policies of insurance against assignments without the consent of the insurer are valid and enforceable notwithstanding the general policy of the law which condemns covenants in restraint of alienation. But we find in them nothing to disturb the conclusion already reached.

In view of this conclusion the other contention of the defendant, based on the provision of the policy, to the effect that no action can be maintained against the insurer except by the assured after satisfaction by it of a judgment rendered against it, requires little consideration. On familiar principles the assignee stands in the shoes of the assignor, and must perform all the conditions precedent to recovery which the assignor was required to perform. The plain meaning of the provision in question, taken in connection with the established assignability of the claim to the plaintiff, is that to render defendant liable on the contract there must have been a loss to the assured, that loss must have been fixed by a final judgment, and that judgment must have been paid in order to constitute a loss within the terms of the policy. Such is the substance and meaning of the contract. Whether the loss is actually paid directly by the hand of the assured, or by some assignee of the claim for indemnity who, for value received from the assured, has assumed the judgment liability, is immaterial. "Qui facit per alium facit per se." The plaintiff paid the judgment against the assured as part consideration for a transfer of its assets, and that was payment by the assured within the purview of the policy. Travelers Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 Atl. 720, 92 Am. St. Rep. 663. There is no impeachment of the good faith of the transfer or of the sufficiency of the consideration for the assumption of the judgment debt by the plaintiff. We entertain no doubt that the case shows such a loss to the assured as within the true interpretation of the policy entitles its assignee to recover on the indemnity contract.

Did the court err in allowing a recovery for interest accrued on the Dent judgment prior to the time plaintiff satisfied it or for costs of that suit paid by plaintiff? This depends upon the true meaning of the contract. Omitting words unnecessary for our present purpose, it is as follows: The company "does hereby agree to indemnify New Omaha Thomson-Houston Electric Light Company * * * against loss for common-law or statutory liability for damages on account of bodily injuries fatal or not fatal suffered by any employé or employés of the assured * * * caused by the negligence of the assured * * * provided, however, (a) that the company's liability for an accident resulting in injuries to or in the death of one person is limited to $5,000. * * * This insurance is subject to the following conditions, which are to be construed as conditions precedent of this contract: (1) The

assured upon the occurrence of an action shall give immediate notice," etc. "(2) If thereafter any suit is brought against the assured to enforce the claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company and the company will defend against such proceeding in the name and on behalf of the assured or settle the same at its own cost, unless it shall elect to pay the assured the indemnity provided for in clause "a" of special agreements as limited therein. (3) The assured shall not settle any claim except at its own cost, * * * " From these provisions it appears that the company reserved the right to elect in case suit should be instituted against the assured, by a person injured, to pay the assured at once the indemnity agreed upon of $5,000 and leave it to protect itself against the demand of its employé in its own way, or to settle or defend the suit at its own cost. The contract does not consist merely of an obligation on the part of the company to indemnify the assured against loss up to the limit of $5,000, but that obligation is made subject to the condition which the parties agreed to that the amount might be lessened if the insurer could do so by settling with the claimant or by defending a suit brought by the claimant against his employer for damages. As a consideration moving from the insurer to the assured for the right to exercise those privileges, the insurer agreed that it would exercise them at its own cost. What do these words mean? Defendant says they mean the costs of the suit, or, technically speaking, court costs. But in our opinion they are not so limited. The words employed are not the technical words familiar to the legal profession, such as "at its own costs," in the plural, which are commonly used in court proceedings when treating of taxable costs, but they are "at its own cost" in the singular. They suggest the idea that the parties meant "at its own expense," generally speaking, rather than court costs merely.

Again, the context shows that the parties intended them to have a more comprehensive meaning than court costs. They agreed in another clause of the same contract that the assured shall not settle any claim "except at its own cost." Here the words which are the same as those now under consideration are obviously employed in their common or colloquial as distinguished from their technical legal sense, meaning "that which is expended; outlay of any kind, as of money, labor, time, or trouble; expense or expenditure in general. * * * " Cent. Dict. Applied to settling a claim before suit was instituted, the words under consideration undoubtedly were intended to cover the outlay or expenditure of money necessary to do so. They could not contemplate technical costs of a lawsuit because the clause last referred to does not contemplate the pendency of a lawsuit but only the making of a claim. Applied to defending a proceeding in court, the words "at its own cost" must mean in the light of the maxim noscitur a sociis, and the untechnical language employed by the parties, an outlay or expenditure necessarily incident to making such defense, like the costs of court, attorney's fees, stenographer's fees, and the like.

As modified by the condition just referred to, the contract is one of indemnity against loss to the extent of $5,000, together with any further sum which the insurer defending in the name of the assured might

force the assured to pay as outlays or expenditures incident to making the defense. It clearly indemnified against the court costs in question. The contract remains one of indemnity against loss only and to the limited extent just specified. The limitation is as much a part of the contract as the covenant of indemnity, and the defendant is as much entitled to the full protection of the agreed limit as the plaintiff is to the protection of the agreement to indemnify. In determining the remaining question, we are brought to this: Is the interest accrued after the original judgment was rendered, and pending the appeal in the Supreme Court, an expense or outlay incident to defending the suit, and when paid by the assured does it constitute a loss within the meaning of the policy?

In answering this question we must not forget that the matter resides in the domain of contract, and that the contract measures the rights of the parties. They agreed that defendant's limit of liability should be $5,000, except as it might be increased by failure on its part to pay the cost of making the defense. The interest, in our opinion, is not a part of such cost. It may be remotely related to the delay occasioned by making a defense, in that if no appeal had been prosecuted and no supersedeas secured the judgment as an indirect result would probably have been paid and no interest would have accrued. But this is a forced and unnatural view to take. An agreement to pay the cost of making a defense in the common and well-understood acceptance of the term fairly and reasonably contemplates the attorney's fees, court costs, stenographer's fees, and other expenditures necessary and directly required to present the defense, and does not include the collateral and indirect results of doing so.

The argument of plaintiff's counsel that the defendant, by exercising its right of appeal, and by superseding the execution of the judgment pending that appeal, caused the accumulation of interest in question, and thereby created an additional charge against the plaintiff for which it should be held responsible as a loss to the plaintiff, is more specious than sound. The fallacy rests in a failure to recognize the advantage which the appeal gave the plaintiff. By reason of it plaintiff was permitted to retain and use the $5,000, which otherwise would have been paid out by it. The value of the use is equal to the accrued interest, that being only a consideration paid for the use of money or for forbearance in demanding it when due. Accordingly the assured lost nothing by the delay occasioned by the appeal or by paying the interest which accumulated pending the appeal. The assured stood after paying the interest exactly as it would have stood if it had paid the judgment of $5,000 on January 3, 1902, when originally rendered. Nothing was lost by the appeal, as the interest ultimately paid was neutralized by the use and enjoyment of the money before that time.

Numerous authorities have been called to our attention as sustaining the different contentions of the parties. Defendant relies on Munro v. Maryland Casualty Co., 48 Misc. Rep. 705, 96 N. Y. Supp. 705, Henderson v. Maryland Casualty Co., 29 Pa. Super. Ct. 398, Frye v. Bath, Gas & Electric Co., 97 Me. 341, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500, Travelers' Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 Atl. 720, 92 Am. St. Rep. 663, and other cases. Plaintiff relies on

Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574, 43 Atl. 503, Allen v. Ætna Life Ins. Co., 76 C. C. A. 265, 145 Fed. 881, 7 L. R. A. (N. S.) 958, Cudahy Packing Co. v. New Amsterdam Casualty Co. (C. C.) 132 Fed. 623, Southern Ry. News Co. v. Fidelity & Casualty Co., 83 S. W. 620, 26 Ky. Law Rep. 1217, Travelers Ins. Co. v. Henderson Cotton Mills, 85 S. W. 1090, 27 Ky. Law Rep. 653, and other cases dealing with the general subject of indemnity, of more or less pertinency to the case in hand. The Rumford Paper Company and Allen Cases, supra, deal chiefly with the contention whether the indemnitor, by availing itself of the right to defend the employés' action, subjected itself to liability for any amount which might be recovered in the action beyond the limit fixed in the policy. That contention was held untenable, and very little, if any, consideration, was given to any other question of law. In the Cudahy Packing Company Case the main contention was whether the indemnitor in an action similar to the present was entitled to a deduction from the limit of its liability of amounts expended in making a defense to the employés' action. It was held that it was entitled to no such deduction. Very little countenance, if any, was given in that case to the present contention of the plaintiff.

All the cases have been carefully considered, and the conclusions reached are believed to be in harmony with the best reason and authority. The result is that the item of interest amounting to $1,326.10, with interest thereon at 7 per cent. from the date of payment, July 21, 1905, by the assured to the date of judgment against the defendant in this case, December 6, 1906, was erroneously charged to the defendant. The court costs proper, amounting to $115.30, were properly charged. Defendant admits that if any recovery is allowed it should be charged with interest on the aggregate amount of $5,115.30 from the date when plaintiff paid it to the date of the judgment in this case. As the amount of recovery is readily ascertainable from figures before us, the case may be disposed of without a reversal. The judgment should have been for $5,607.60 instead of $7,061.37 as entered. There may, therefore, be a remittitur of the difference, $1,453.77. Our conclusion is that the judgment must be reversed, unless within 30 days after the filing of this opinion plaintiff files in the clerk's office of the Circuit Court for the District of Nebraska, where the judgment was rendered, a remittitur of $1,453.77, and within 10 days thereafter files with the clerk of this court a certified copy of the record, showing the filing of such remittitur in the court below. If such remittitur and such certified copy be filed, a judgment will then be entered affirming the judgment below for $5,607.60, the same to bear interest at the rate of 7 per cent. per annum from December 6, 1906. If such remittitur and certified copy be not filed within the times aforesaid, the judgment will be reversed, with directions to grant a new trial.