IOWA MUTUAL INSURANCE COMPANY OF DE WITT, IOWA, A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. JANE MECKNA, APPELLEE AND CROSS-APPELLEE, DEAN ENGLISH, ADMINISTRATOR OF THE ESTATE OF ROBERT E. ENGLISH, DECEASED, APPELLEE AND CROSS-APPELLANT, JAMES KOLB, INTERVENER-APPELLEE AND CROSS-APPELLEE.

144 N. W. 2d 73

Filed July 8, 1966. No. 36199.

Boland, Mullin, Walsh & Cooney and Webb, Kelley, Green & Byam, for appellant.

Norman Denenberg, for appellee English.

Keith Howard, for intervener-appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and COLWELL, District Judge.

SPENCER, J.

This is an action for a declaratory judgment brought by Iowa Mutual Insurance Company of De Witt, Iowa, hereinafter referred to as insurer, against Jane Meckna, hereinafter referred to as Meckna, and Dean English, administrator of the estate of Robert E. English, de-

ceased, who will hereinafter be referred to as administrator.

Insurer, previous to June 11, 1962, issued an automobile liability policy with limits on liability of $10,000 for each person for personal injuries and $10,000 for property damage to Robert E. English, the deceased. This policy included omnibus insurance coverage and was in full force and effect at all times material herein. This action is to determine the rights and liabilities of the parties under said policy.

The factual situation out of which the present action arises, so far as material to an understanding of the issues involved, is substantially as follows: On June 11, 1962, Meckna, while operating the insured automobile, with the express permission of the named insured, who was riding therein as a passenger, collided with a parked automobile owned by James Kolb. Robert E. English died as a result of this collision. Kolb, who had filed a claim in the Robert E. English estate, and an action against Meckna for damages sustained to his automobile in the collision, filed a petition in intervention herein.

On June 12, 1962, Meckna gave a statement at the police station to a deputy county attorney in the presence of a court reporter that the deceased was driving the car at the time of the collision. The information secured by the police from other witnesses indicated that Meckna was the driver, and the original report listed the driver as unknown. On June 14, 1962, an attorney, Phillip Abboud, hereinafter referred to as Abboud, wrote the insurer to advise that his client Meckna, whom he stated was a passenger in the car at the time of the collision and who was 4½ months pregnant, had a claim for personal injuries.

On June 16, 1962, Meckna went to the police station and in the presence of a deputy county attorney and a court reporter changed her version of the accident and gave a statement admitting that she was the driver

of the automobile at the time of the collision. She stated she had concealed this fact because of her five children. This new version was reported in a local newspaper and clippings of the story were placed in the insurer's file. After the newspaper story appeared, an agent of the insurer called Abboud and asked permission to talk to Meckna but Abboud refused to allow Meckna to be interviewed, and gave as the reason a pending motor vehicle homicide charge against Meckna.

On June 22, 1962, Abboud wrote to the insurer as follows: "I have been retained to represent Mrs. Jane Meckna who, as you know was injured in an auto accident June 11, 1962, and is still under doctor's care.

"Please be advised that we shall cooperate fully with you in all respects and on account of the pending Motor Vehicle Homicide Charges I, of course, desire to investigate the matter thoroughly which investigation has not as yet been concluded."

On August 6, and on September 17, 1962, the attorney for Kolb wrote insurer relative to the damage to the Kolb automobile. Insurer's resident vice president acknowledged receipt of the letters, but replied that insurer was not in a position to admit or deny liability, and stated that it was continuing its investigation. On August 29, 1962, the administrator filed suit in the district court against Meckna. Answer day for Meckna was October 1, 1962.

On September 19, 1962, the insurer wrote Abboud requesting information as to the exact status of the case. On September 20, 1962, Abboud wrote the insurer's resident vice president as follows: "In reply to yours of the 17th inst. we beg to advise that Miss (Mrs.) Jane Meckna has, on various occasions, unsuccessfully attempted to contact you. We were told, in our effort to reach you by 'phone, that you were out of town and conveyed to other employees what our intentions and purposes were, and we were informed to call at a later

time. In the interim we have received your letter already referred to.

"We want you to know and understand that Jane Meckna the defendant in the above captioned matter is available at any time, is willing and ready to work in conjunction with any efforts you may undertake in defending the lawsuit instituted against her and will wholeheartedly co-operate with you with every reasonable and legal way without jeopardizing her own rights or exposing herself in any manner in case of adverse judgment being rendered against her.

"We are enclosing herein copy of a summons and a petition involving the litigation in question, which is self-explanatory. This matter is being given our very early attention in the hope that you will have ample time and opportunity to consult with Jane Meckna and to protect both the rights of the insurance company and the rights of my client.

"Awaiting your further wishes and instructions relative to this subject matter, I am * * *."

On September 24, 1962, insurer's attorney telephoned Abboud and stated that he questioned whether or not the policy extended coverage to Meckna, and suggested that there was also a serious question as to whether the insurer would owe any obligation to Meckna because of her failure to give notice and make reports to the company as well as the fact that she gave conflicting versions of the accident. He suggested, however, that he would be willing to recommend a defense under a reservation of rights agreement.

It is the testimony of insurer's attorney that Abboud indicated he would be glad of an opportunity to unload the defense under such an arrangement, and asked him to find out if the insurer would defend under a reservation of rights. On October 1, 1962, insurer's attorney called Abboud to state that the company had accepted his recommendation, and suggested that the English case be continued to permit the preparation of the agree-

ment. Abboud authorized insurer's attorney to prepare a motion for a continuance in his name. Insurer's attorney then prepared and filed, under Abboud's name, a motion for extension of time to plead, until October 15, 1962.

On October 3, 1962, insurer's attorney wrote Abboud, enclosing a reservation of rights agreement and, among other things, stated: "This procedure will enable me to undertake the defense of the above suit under the terms of the agreement and will reserve all rights which Jane Meckna and/or Iowa Mutual Insurance Company may have at this time.

"As you know, I have filed a Motion to extend our Answer Day to October 15, 1962. It is, therefore, vital that you return the executed document to me prior to that time."

On November 6, 1962, insurer's attorney wrote Abboud that Kolb's attorney had sent him a copy of a petition filed by Kolb, and stated: "My people have instructed me to walk away from further involvement in these suits unless and until Jane Meckna executes and returns the Reservation of Rights Agreement which I forwarded on October 3, 1962, over one month ago."

On January 8, 1963, Norman Denenberg, the attorney for the administrator, served a motion for default judgment and a notice of hearing on Abboud. When Abboud did not appear at the time stated in the notice, no action was taken.

On January 28, 1963, the attorney for the administrator served another notice on Abboud, stating that the motion for a default judgment would be called up January 30. There is no question but that Abboud received both of these notices. When neither Abboud nor Meckna appeared on January 30, a hearing was set for February 13 to determine the amount of damages. At that time, evidence was adduced and a default judgment for $12,930 was entered against Meckna. The evidence is undisputed that Abboud did not notify the insurer or its attorney

that he had been notified of the default. In this respect, it is noted that Rule 7H of the Douglas County district court designates the Daily Record as the official court newspaper for the purpose of publishing new suits, pleadings, abstracts of court orders, and judgments. Abboud's testimony is evasive on any notice to Meckna, and it is more than likely that she was not notified.

Meckna testified that she signed the reservation of rights agreement during 1962, but could not give a more exact date. Abboud at the trial testified that the agreement was not signed until after the default. It is apparent that he either deliberately lied or was mistaken. His conduct and his statements to the attorney for the insurer, as well as his testimony in a deposition, indicate that Meckna signed the reservation of rights agreement in the fall of 1962, long before her default was entered.

On March 9, 1963, insurer's attorney received the executed reservation of rights agreement, which was not dated, from Abboud. On the same day, the attorney for the administrator telephoned the insurer, and advised it that he had taken a default judgment on February 13. On March 20, insurer's attorney wrote Abboud acknowledging receipt of the reservation of rights agreement and stating that he had been advised that a judgment had been entered against Meckna, advised him as to the procedure necessary to set aside the default, stated that it was impossible for the insurer to defend the action so long as the default judgment remained in effect, and suggested that immediate steps be taken to set aside the judgment.

On April 19, 1963, insurer's attorney wrote both Abboud and Meckna that inasmuch as he had not heard from them since his letter of March 20 to Abboud, he felt it best to do everything possible to have the default judgment set aside and that he had prepared and filed a motion for that purpose; advised them that the motion was set for hearing April 26, 1963; and suggested that

it was particularly important that Mrs. Meckna come to his office to execute the proposed answer. Jane Meckna appeared at his office soon thereafter, and advised him that the first information she had of the default was his letter. She signed the answer which he had prepared, and appeared at the hearing on the motion.

The motion to set aside the default was overruled, and insurer's attorney, in the name of Meckna, filed a motion for a new trial. This was overruled. On May 22, 1963, the attorney for the insurer wrote Meckna that if anything further was to be done, it would involve an appeal to the Supreme Court; that the insurer specifically denied that coverage under the policy extended to her; and, therefore, declined to prosecute such appeal. She was thereupon advised that she could take such an appeal herself through her own attorney, and at her own expense.

The trial court held against the insurer, directed the insurer to satisfy the judgment against Meckna to the extent of the policy limit, and determined that the policy extended coverage for the loss sustained by Kolb.

Insurer sets out 11 assignments of error, which for purposes of discussion we condense to five main points: (1) Meckna is not covered by the policy; (2) the English claim does not come within the coverage of the policy; (3) insurer is relieved of liability because of the breach of the notice clause of the policy; (4) insurer is relieved of liability because of the breach of the cooperation clause of the policy; and (5) the court erred in holding that the judgment obtained against Meckna bound the insurer.

There can be no question that coverage is extended by the policy to any person driving the automobile with the permission of the named insured. This is specifically provided in the policy and is also provided under what is commonly designated as the omnibus statute. § 60-534, R. R. S. 1943. Meckna was driving with the permission of the named insured, and is therefore an

additional insured within the terms of the policy. The policy provides: "The insurance afforded under Part 1 applies separately to each insured against whom claim is made or suit is brought, * * *."

This jurisdiction is committed to the rule that even though an insurance policy obligates the insurer to defend all suits brought against the insured, even though groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy. Gottula v. Standard Reliance Ins. Co., 165 Neb. 1, 84 N. W. 2d 179. It is, therefore, insurer's contention that the named insured does not belong to the class of persons whose injuries are covered by the policy, and consequently his personal representative has no claim thereunder.

Insurer argues that permitting the administrator to recover would change a liability policy into a personal accident policy for the benefit of the named insured, and would run counter to the principal purpose of an automobile liability policy of protecting the named insured against liability. While this point has not arisen heretofore in this state, it has been before the courts of many other jurisdictions. As insurer states: "* * * the courts are not agreed as to whether an automobile insurance policy covers injury or death of the named insured caused by another who is an additional insured under the omnibus clause." However, in the greater number of cases, the courts have sustained the right of the named insured, or, in case of his death, his representative, to recover. 7 Am. Jur. 2d, Automobile Insurance, § 128, p. 447. See, also, Annotation, 143 A. L. R. 1394, and cases supplementing that annotation.

In Protective Fire & Cas. Co. v. Cornelius, 176 Neb. 75, 125 N. W. 2d 179, we stated: "The purpose of the omnibus clause is to fix the liability of additional insureds and to eliminate ambiguities and defenses with reference thereto as a matter of public policy. We conclude, therefore, that the omnibus clause imposes

liability on the insurer for the negligence of any person using the insured's automobile with his permission."

The following observation in 12 Couch on Insurance (2d ed.), § 45:483, p. 472, discussing recovery on behalf of a named insured, is pertinent herein: "This conclusion is stressed by the rule of construction against the insurer, and by the fact that if coverage in such case were not intended the insurer could have readily so declared by the addition of an express exclusion in the policy to that effect." We hold that the death of a named insured caused by one operating his automobile with his consent is within the coverage of the omnibus clause of his liability policy.

Having determined that Meckna is an additional insured, we now consider insurer's contention that Meckna breached the notice and cooperation provisions of the policy. Considering first the notice provision, we quote: "In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable." What is the purpose of this provision? Patently, it is to alert the insurer to a possible claim and to afford it an opportunity to make such investigation as it deems pertinent to enable it to process any future claim. Here, the insurer had actual notice of the collision involving the automobile covered by the policy, and of the death of the named insured within hours of the tragedy. Actually, the agent who sold the policy called insurer the morning after the collision. Its resident vice president visited with Meckna within less than 24 hours thereafter, and within a few days thereafter it had procured a copy of the police report. Its own file discloses that within 4 or 5 days thereafter, it knew that Meckna was the driver of the car, and that she had

corrected her first report to the police. Insurer also was fully cognizant of the possibility of motor vehicle homicide charges against Meckna, and understood her dilemma. The Kolb loss was taken up directly with the insurer by Kolb's attorney. The record would indicate that insurer also knew of the availability of other witnesses soon after the accident, and while the record does not indicate that they were interviewed by insurer, the original police report listed the driver as unknown because these witnesses had given the information that a woman and not the deceased was driving the automobile. Insurer had all the information Meckna could give it, and had ample notice to permit it to take any and all necessary steps to protect its interest. Under the facts in this case, there is no merit to this assignment.

The cooperation clause, so far as material herein, provides: "The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

At the outset, we call attention to MFA Mutual Ins. Co. v. Sailors, *ante* p. 201, 141 N. W. 2d 846, a case in principle not too different from the instant one. In that case, we held: "An insurer cannot assert a breach of the cooperation clause as a policy defense in the absence of a showing of prejudice or detriment to the insurer."

There certainly is nothing in this record to justify insurer, on September 20, 1962, after insurer was informed that Meckna was available at all times and was willing and ready to work in connection with any efforts to defend the administrator's claim, to assert the breach of the cooperation clause. Abboud on this occasion specifically withdrew any suggestion that dealings with Meckna should be through him, by telling insurer he was sending the summons and petition promptly to permit insurer ample time to *consult with Meckna.*

Thereafter, it is apparent that insurer's conduct was actuated by its desire to secure, and its insistence upon, a reservation of rights agreement. But even this would not explain its failure to consult with Meckna if there was further information it desired. We agree that insurer did no wrong in asking Meckna to sign a reservation of rights agreement. However, it had no right to insist on such an agreement as a condition precedent to undertaking the defense, which is the interpretation we put on the evidence herein. It was obligated to defend by the terms of the insurance policy, and must assume responsibility for the consequences of its action.

We held in Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623: "An insurer does not have the right without consent of the insured to retain control of the defense of an action indemnifiable under the apparent terms of an insurance policy and at the same time reserve the right to disclaim liability on the policy."

It is also pertinent to observe that the burden of proving noncooperation is on the insurer who urges it as a policy defense. Insurer throughout the case infers that the fact that Meckna gave an incorrect statement in the first instance violates the cooperation clause. We suggest this misstatement was corrected within 4 or 5 days, and the testimony of other witnesses indicated it was a misstatement. The general rule is that a misstatement by an insured promptly or seasonably corrected or withdrawn prior to trial of the action against the insured, does not constitute a breach of the cooperation clause. See cases at page 267, 34 A. L. R. 2d.

Under the facts of this case, we do not feel that the insurer is in a position to avoid liability under a claim of noncooperation. There is no question but that additional insureds are bound by the terms of the policy, but those terms are subject to a reasonable interpretation under the facts presented. It is evident from the record that Meckna at all times after September 20, 1962, was willing to cooperate and did cooperate fully

when she was eventually contacted by the insurer. It also should have been very apparent to insurer that Abboud was not protecting the interests of Meckna. It is hard to understand the motivation for his conduct. We can only suggest that the insurer was in a much better position than Meckna, who was its insured, to see that her rights were protected.

In MFA Mutual Ins. Co. v. Sailors, *ante* p. 201, 141 N. W. 2d 846, we said: "The purpose of the cooperation clause is to prevent collusion between the injured and the insured and to facilitate the handling of claims by the insurer." Insurer insinuates that collusion may be present herein. It is true that representatives of the administrator on two occasions urged Meckna not to sign the reservation of rights agreement. This conduct cannot be condoned. Certainly the administrator's attorney, regardless of his motives, should not have attempted to interfere with the relations between Meckna and the insurer. As the trial court well observed, "Justice is not served when counsel interviews opposing counsel's client, with or without permission, when litigation is pending." However, Meckna's evidence is conclusive that the reservation of rights agreement was signed and was in Abboud's hands before any contact was made by representatives of the administrator. There is no evidence of collusion in this record so far as Meckna is concerned. If collusion were being urged as a defense, the burden of proof would be on the insurer. Insurer has not met that burden.

With specific reference to the default judgment herein, we observe that the insurer could not help but know of the possibility of a default judgment unless some action were taken on the pending action. The record indicates that it relied on Abboud to see that no judgment was entered. In that respect, it is as much bound by what happened as Meckna. Insurer saw fit to secure additional time to answer, and must be held to understand the effect of not answering or otherwise pleading

in the action. It cannot be excused for permitting several months to pass without further pleadings after the time for answer had expired. If it permits this situation to exist, it must assume responsibility to see that Meckna was not defaulted. The entry of an appearance would have required notice to it. Insurer saw fit to gamble on its insistence on a reservation of rights agreement and to "walk away from further involvement" until the execution and return of the reservation of rights agreement. It is bound by the consequences of that action. Where an insurer sees fit to gamble on its insistence on a reservation of rights agreement and to ignore the fact that an action against its insured is in default, it is in no position to complain about a default judgment entered against its insured.

The administrator has filed a cross-appeal herein, directed to that portion of the trial court's judgment denying attorneys' fees, and directing that counsels' request should be addressed to the judge of the county court. A question has been raised as to whether this action is embraced within the provisions of section 44-359, R. R. S. 1943, under which the claim is made. We do not deem it necessary to determine this question. We have criticized certain conduct on the part of administrator's attorney. If a fee were allowable herein, we would hold its allowance not to be justified on the record before us.

For the reasons stated, the judgment of the trial court is affirmed.

AFFIRMED.