**898**

The BABCOCK & WILCOX COMPANY,
Plaintiff,

v.

PARSONS CORPORATION, Defendant
and Third-Party Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Third-Party Defendant.

Civ. 02260.

United States District Court
D. Nebraska.

April 11, 1969.

John T. Grant, Omaha, Neb., for plaintiff.

Malcolm Young, and William Naviaux, Omaha, Neb., for defendant.

John Douglas, Omaha, Neb., for third-party defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This action comes before the Court on a separate trial of a third-party complaint. The third-party plaintiff, Parsons Corporation [Parsons], seeks to recover from the Insurance Company of North America [I.N.A.] the attorney fees and costs it expended in defense of the main action and the expenses of processing the present action.

Parsons alleges in its third-party complaint that I.N.A. failed to discharge its contractual obligation to defendant Parsons in the main action brought by Babcock & Wilcox Company [Babcock]. Babcock, as an intervening plaintiff in the present trial to the Court, seeks recovery for damages sustained to its 110-ton P & H Crawler Crane as a third-party beneficiary under a machinery and equipment floater policy issued by I.N.A. to Parsons, plus costs and attorney fees expended for this trial.

It is necessary to relate the chronological sequence of events leading up to the present trial in order to understand the present posture of the case. Integrated into the history of the case are our fact findings necessary to dispose of the matter on its merits. In 1964 Babcock and Parsons were engaged in construction work on a power plant located outside of Stanton, North Dakota. As is customary in the trade, the two construction corporations, though working independently, agreed that each would perform services for the other on a reciprocal basis.

At the completion of construction the value of the parties' services were to be offset, and any remaining balance in excess of the "swapout", paid. The evidence shows that prior to May 21, 1964 Parsons had performed some services for Babcock at the latter's request. On or about May 21, 1964, the above parties agreed that Babcock's 110-ton P & H Crawler Crane would be used to lower Parsons' stiff-legged derrick to ground level from a point approximately sixty [60] feet above.

On the morning of May 21, 1964, the crane operator, Conrad Flemmer, had been told that he would begin the day working for Babcock, but that sometime during the morning he would be assigned to Parsons to lower the derrick as previously agreed. At roughly 10:00 A.M. Mr. Cheshire, foreman of the Babcock job, gave Flemmer a hand signal to begin work for John Ell, the Parsons' foreman in charge of lowering the stiff-legged derrick. Ell, by use of hand signals, directed Flemmer into position for the hoist of the derrick base. After an unsuccessful attempt to lift the derrick, Ell signalled Flemmer to situate the crane's tracks perpendicular to the wall below the derrick. The lift signal was again given by Ell and the derrick was hoisted. Ell next gave a signal to swing the load to the side. Part way through the swing Flemmer stopped of his own accord and requested Ell to come down from above and discuss the "swing". Ell then approached the crane cab. Flemmer explained that he would prefer to walk the load directly back rather than swing it to the side. Ell refused to permit him to walk the load back. Ell again gave him the swing signal. Flemmer, following the instruction, started the swing. Part way through the swing the crane's boom bowed in the middle and then broke. The boom and its load crashed to the ground.

Parsons' insurer, I.N.A., was given notice of the May 21, 1964 occurrence four days later on May 25, 1964. [Deposition of Paul W. Witzenburg p. 7, lines 2 and 3]. I.N.A. referred the loss to General Adjustment Bureau in Bismarck, North Dakota, for investigation [Dep. supra p. 7, lines 22–25]. On March 26, 1965, roughly ten months after the accident, Babcock filed a complaint in this Court against Parsons for damages to its crane. The limited significance of the complaint to the present trial is that two of the three counts alleged that the crane was in possession of Parsons pursuant to a rental or loan arrangement at the time it

was damaged while the third count is devoid of any allegations that Parsons was ever in possession of the crane. The third count merely stated a claim in negligence against Parsons.

The defense to the various counts was tendered by Parsons to I.N.A. orally on March 31, 1965 and again by a letter dated April 1, 1965. [Plaintiff's exhibit #3].

Inquiry was again made of I.N.A. on May 6, 1965, as to whether it intended to undertake the Parsons' defense [plaintiff's exhibit #4]. I.N.A. decided against defending the action under its liability policy altogether though there was a defense clause in that policy. I.N.A. based its refusal to defend on the fact that counts one and two of the complaint alleged circumstances surrounding the accident that were outside the policy coverage. The defense provision under CGL 21 94 39 contains the following language:

"With respect to such insurance *as is afforded by this policy,* the 'company' shall:

[a] defend any suit against the insured alleging such * * * destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * * " [emphasis supplied]

An exclusion provision thereunder provided:

"This policy does not apply: [h] under coverage B. to injury or destruction of [1] *property owned or occupied by or rented to* the insured. * * * " [emphasis added].

I.N.A. did, however, offer to defend Parsons under the machinery floater policy if Parsons would sign a "non waiver agreement." Parsons did not accept the conditional offer of defense. Parsons, through its own counsel, then proceeded to defend the main action by filing an answer and counterclaim on May 18, 1965.

The answer specifically denied the allegations in those counts contending that Parsons had either *rented* or *borrowed* Babcock's crane. Parsons also filed a third-party complaint against I.N.A. alleging that I.N.A. refused to defend it in the Babcock action. Parsons asks for two forms of relief: [1] that I.N.A. be held liable, as the insurer on its liability and machinery floater policies, for whatever judgment Babcock might receive in the main action; and [2] for reimbursement of all expenditures Parsons might necessarily make in defending the Babcock action. I.N.A., in its June 17, 1965 answer, admitted the existence of the aforementioned policies and that it had refused to defend under the liability policy. I.N.A. moved for a separate trial on the third-party action. We ordered its separation from the main claim.

■ On September 19, 1966 Parsons filed its second amended answer and counterclaim in the main action. In that answer Parsons continued to refute that it had leased the crane, contending that Babcock acted as an independent contractor in lowering the derrick. Parsons' position in this respect remained consistent throughout the remainder of the jury trial. The evidence in the trial discloses that those observing the movement of the crane believed Flemmer had conducted the "swing" of the derrick in a careful manner. In light of the evidence, we cannot say, nor did the jury decide that the decision to "swing" the load to the side was a negligent one. The only evidence as to the weight of the load discloses that it was twelve to fourteen [12–14] tons, well within the capacity of the crane. While some evidence was offered to suggest that the crane boom was in a defective condition at the time of the lift, we do not find that to be the case. Rather, it appears, though it could not reasonably be foreseen by those involved, the load drifted ahead of the boom point causing the boom to bow more to the side than its stress capacity allowed. The inevitable result was the buckling and subsequent crashing of the boom and its load to the ground.

The jury in the main action, determined two factual issues important to the

present action: [1] that Conrad Flemmer was a special employee of Parsons at the time of the mishap; and [2] that the damage to the boom was $10,000.00.

After the jury trial, on February 23, 1968, Parsons filed an amended third-party complaint alleging that I.N.A. had refused coverage under both policies. The relief sought by Parsons in its latest amended complaint, however, is limited to recovery of defense expenses and expenses of bringing the present action. On February 27, 1968, Babcock sought and received permission to intervene in the third-party action. This Court ordered that the complaint of the intervenor relate back in time to May 18, 1965, the date on which Parsons had filed the original third-party complaint.

Babcock's complaint against I.N.A. alleges the existence of the floater policy, No. EF 6150, and the jury's findings. Babcock's complaint seeks relief as a third-party beneficiary under the floater policy in the amount of $10,000, plus attorney fees and costs in the present trial. We depart, at this point, from a prologue of the surrounding facts to consider the questions of law involved.

## INSURER'S DUTY TO DEFEND

■ Floater Policy No. EF 6150 did not contractually obligate I.N.A. to defend Parsons against any damages to a third party's machinery covered by that policy. Parsons and I.N.A. never entered into any separate defense agreement in this respect. Therefore, Parsons cannot recover attorney fees and costs in defending the main action under that policy.

■ The more serious legal question raised by Parsons is whether I.N.A., under the circumstances, breached its duty to defend under the Comprehensive Liability Policy, CGL 21 94 39. I.N.A.'s obligation to defend is, of course, limited by the scope of the defense provisions in that contract. Westchester Fire Ins. Co. v. Rhoades [Tex.Civ.App. 1966] 405 S.W. 2d 812; Pickens v. Maryland Cas. Co., [1942] 141 Neb. 105, 2 N.W.2d 593. The defense provision in the policy before us limits the obligation to defend to actions alleging losses within the policy coverage. An insurer does not have a duty under such a provision to defend property liability claims that fall outside of the coverage. Federal Ins. Co. v. Forristall, [Tex.Civ.App. 1966] 401 S.W.2d 285; Iowa Mut. Ins. Co. of DeWitt, Iowa v. Meckna, [1966] 180 Neb. 516, 144 N.W.2d 73, 15 A.L.R.3d 698; Gottula v. Standard Reliance Ins. Co., [1957] 165 Neb. 1, 84 N.W.2d 179.

The liability policy excluded any coverage for losses involving property rented or occupied by the insured.

■ The primary factor in determining whether I.N.A. had a duty to defend is whether Babcock's complaint in the main action *alleged* an injury that was arguably covered by the policy. Lee v. Aetna Casualty & Surety Co., [2d Cir. 1949] 178 F.2d 750; National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks [1966] 179 Neb. 642, 139 N.W. 2d 821. Babcock's third count states nothing more nor less than a negligence claim against Parsons.

"That on May 21, 1964, in Stanton, North Dakota, plaintiff's 110-ton P & H Crawler Crane was damaged, due to the negligence of the defendant, in the amount of $29,657.60."

■ While there are allegations in counts one and two that the crane was either leased or loaned to Parsons, there are no such allegations in the third count. Count three therefore obligated I.N.A. to defend the entire action until such time as it could affirmatively resolve any doubt that the claim was not a covered event under the policy.

"Where one action contains claims upon various grounds, some within and some without the indemnity agreement, the insurance company must, under its agreement to defend, take charge of the entire suit." Hendrix v. Employers Mut. Liability Ins. Co. of Wisconsin, [E.D.S.C.1952] 102 F.Supp. 31, 35, 199 F.2d 53, rev. on other grounds.

"[T]o allege that an injury happened in one of several ways, is not to allege that it happened in any one of the ways. * * * It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant [insurer] to undertake the defence, until it could confine the claim to a recovery that the policy did not cover." Lee v. Aetna Casualty & Surety Co., supra, 178 F.2d pp. 752, 753.

■■ There is little doubt that the elasticity of modern pleading imposes a more difficult responsibility upon the insurer to ascertain that the loss is not within the scope of the policy. Be that as it may, it does not relieve the insurer of its obligation of ascertaining that the claim is excludable under the policy coverage before it escapes its initial duty to defend. If it elects not to defend, without meeting that burden, it does so at its own peril. Moffat v. Metropolitan Casualty Insurance Co. of New York, [D.C.Pa.1964] 238 F.Supp. 165. Under the circumstances, I.N.A.'s failure to discharge its duty to defend was a breach of its contract. Couch on Insurance 2d, § 51.50, p. 543. We recognize that Parsons' continued denial that it neither rented nor borrowed the crane placed I.N.A. in an awkward position. I.N.A.'s natural desire to have the claim considered excludable under the applicable policy provisions developed a conflict of interest that perhaps would have prevented it from defending Parsons in the main action. The conflict, however, is not one that was impossible to resolve. I.N.A. could have brought an action for declaratory judgment in order to determine its obligation to defend. Maryland Casualty Co. v. Texas Co., et al. [8th Cir. 1940] 114 F.2d 952.

■ The remaining issue then with respect to the Parsons' claim is the extent of the damages proximately caused by I.N.A.'s breach. We do not believe that I.N.A. satisfactorily confined Babcock's claims to an event excluded by the policy at any time prior to the jury verdict.

Consequently, all expenses and attorney fees necessary to the defense of the main action as well as those necessary in processing the present action are properly allowable. Maryland Casualty Co. of Baltimore, Md. v. Omaha Electric Light & Power Co., [8th Cir. 1907] 157 F. 514; Universal Underwriters Insurance Company v. Wagner, [8th Cir. 1966] 367 F.2d 866. We find that the necessary and reasonable expenses and attorney fees in the main action respectively are $4,809.-77 and $7,000. Reasonable attorney fees for the present action are $750.00.

### RIGHT TO RECOVER UNDER THE FLOATER POLICY

As previously mentioned, Babcock seeks recovery as a third-party beneficiary under the floater policy issued by I.N.A. to Parsons for damage sustained to its crane while in the possession of Parsons, plus costs and attorney fees expended in this trial. The pertinent provisions of the floater policy may be summarized as follows. The policy covers all risks of physical loss or damage to property that is owned, *rented* or *borrowed* by the insured, which occurred from an *accidental cause*. The coverage is further limited by certain exclusions. Excluded from the policy are all machinery or equipment losses that are caused by defective machinery or parts; wear, tear or gradual deterioration of equipment; mechanical breakdown or failure of machinery; or losses to machinery occasioned by the weight of a load exceeding its designed capacity. The policy also states as a condition precedent to recovery that the insured must file with the insurer or its agent a sworn proof of loss statement within ninety [90] days of the date of loss. The policy further states that all suits must be brought against the insurer within twelve [12] months after the discovery of the occurrence in order to recover.

■ The first issue we must necessarily resolve is whether Babcock is barred from recovery for failure of it or Parsons to file a satisfactory statement of loss within ninety days of the ac-

cident. The facts disclosed that I.N.A. had actual notice of the loss within four [4] days after its occurrence. The Nebraska courts have spoken on this very subject:

"Patently, [the purpose of a notice provision] is to alert the insurer to a possible claim and to afford it an opportunity to make such investigation as it deems pertinent to enable it to process any future claim. Here, the insurer had actual notice of the collision * * *. The record would indicate that insurer also knew of the availability of other witnesses soon after the accident. * * * Under the facts in this case, there is no merit to [the] assignment [of failure to provide notice]." Iowa Mutual Ins. Co. of DeWitt, Iowa v. Meckna [1966], 180 Neb. 516, 525–526, 144 N.W.2d 73, 79.

The contractual one year statute of limitations does not stand in the way of recovery either.

"The statutes of this state provide in what time actions may be brought; and a contract which provides that no action shall be brought thereon, or for a breach thereof, unless within a time therein specified, which is different from the time which the statute fixes for bringing an action on such contract or for a breach thereof, is against public policy and will not be enforced by the courts of this state." Dunlop Tire & Rubber v. Ryan [1961] 171 Neb. 820, 825, 108 N.W.2d 84, 88.

We further find from the evidence that Babcock loaned its crane and operator for compensation. While the tendering of the crane and operator for Parsons' use might be most correctly called a bailment for use, tendering equipment to another for compensation may legally be characterized as a rental agreement. The loss, in that respect, falls within the meaning of the policy.

Defendant also raises the issue as to whether the policy covers merely such loss as the insured sustained from the damage to the crane or the loss sustained by the owner of the crane as well. While the evidence does not disclose that Parsons obligated itself in any manner to carry insurance on the crane while in its possession, the policy provisions are nonetheless broad enough to cover both Babcock's and Parsons' interest. Aetna Ins. Co. v. Jackson, [1855] 55 Ky. 242; 67 A.L.R.2d 1260.

Where insurers wish to limit their responsibility under the policy to the interest which their insured has in the property as bailee, they should insert the precise words to do so. London v. N. W. R. Co. v. Glyn, [1859] 1 El. & El. 652, 120 Eng. Reprint 1054, 67 A.L.R. 2d 1248. The only fair interpretation to give to the language of the present policy is that it covers the loss occasioned by Babcock as bailor of the crane as well as such interests Parsons might have.

I.N.A. also contends that while the policy might cover the total value of the damage to the crane, Babcock has no right to the proceeds of the policy and hence, no right to sue I.N.A. for the proceeds. Defendant cites David Bradley & Co. v. Brown [1907] 78 Neb. 836, 112 N.W. 331; 13 L.R.A.,N.S., 152, in support of its contention. The facts of that case, however, are easily distinguishable from those in the present trial. In that case the bailor and bailee had entered into a separate written agreement which rendered the bailee liable for loss to the bailor's property in his custody whether or not insurance was purchased to cover said property. The final result, in permitting the trustee in bankruptcy for the bailee to recover the proceeds as opposed to recovery by the bailor was *not* determined on the basis of the policy language, but rather, the result was based solely upon the separate written contract of the parties.

"The parties cannot be supposed to have contracted with a view to future insolvency. They had seen fit to fix their rights and obligations in event of a loss or damage by fire. Brown was bound to respond absolutely and unconditionally, and it follows, as it

seems to us, that the insurance he procured upon the goods was for his own benefit and advantage exclusively. The moment the goods were destroyed by fire, the relation of principal and agent ceased, and that of debtor and creditor supervened." Id.

■■ In that opinion, Justice Ames also stated what we believe to be the law in Nebraska regarding a bailor's right to sue the bailee's insurer where extended coverage existed.

"Each of the policies recited that it should protect property belonging to the insured, and that 'held in trust by him, or on commission, for which he may be legally liable.' It is not disputed that the property in question falls under this description, and counsel for plaintiffs contends for the application of the rule that, where an agent in the possession of personal property insures it against fire, the money due upon the policy after the loss belongs to his principal, *who may recover it directly from the insurance company, and that, if it is paid to the agent, the latter holds it in trust, merely for the benefit of the party ultimately entitled.* Authorities to this effect are not wanting, and in our opinion are sound." [emphasis supplied] Id.

There are two remaining questions that require our consideration: [1] whether the loss came about because of the defective condition or overloading of the crane; [2] what was the amount of the loss.

The record is void of any evidence which demonstrates that the mishap to the crane boom was brought about by wear, tear, gradual deterioration or defective machinery or parts. Nor do we find from the evidence that the damage to the boom was caused by mechanical breakdown or failure or in consequence of repairing within the meaning of those terms in the exclusion section.

■ As we have stated before, the weight of the derrick base was well within the designed capacity of the crane. Finally, we hold that the loss resulted from an "accidental cause". An "accident" within the meaning of an insurance policy of this nature denotes an unintended and unforeseen injurious happening. Baker v. American Ins. Co. of Newark [4th Cir. 1963] 324 F.2d 748.

■ This leaves for consideration the amount of damages and an assessment of costs and reasonable attorney fees. There is ample evidence to support a finding that the crane boom was damaged in the amount of Ten Thousand [$10,000.00] Dollars. We are in accord with the jury as to this assessment of property damage. We believe, however, that the assessment of damage by the jury is the "law of the case" and need not be relitigated in the present trial. In re Campbell [D.C.Cal.1940] 35 F.Supp. 100, 9 Cir., 119 F.2d 420; Gulf Research & Development Co., et al., v. Leahy, et al., [D.C.Del.1951] 98 F. Supp. 198; 193 F.2d 302, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668, reh. den. 344 U.S. 900, 73 S.Ct. 273, 97 L.Ed. 695. Because the floater policy contained a $50.-00 deductible we limit recovery under the policy to $9,950.00. The Court will not allow recovery of attorney fees expended by Babcock in this trial to be taxed as part of the costs under R.R.S.1943, § 44–359 [Reissue 1968]. Machinery floater policies are not within the class of policies contemplated by that statute. Normal court costs, however, will be assessed against I.N.A.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Counsel for the third-party plaintiff, Parsons Corporation, and the intervening plaintiff, The Babcock & Wilcox Company, shall together prepare and submit an appropriate order of judgment within fifteen [15] days.